[No. 11552-9-I.   Division One.   September 19, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. L. C. DAVIS, *Appellant.*

*Fred Leatherman,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Alvin Littles* and *Alexander Bortnick, Deputies,* for respondent.

SWANSON, J.—L. C. Davis was convicted for a violation of the Uniform Controlled Substances Act (possession with intent to deliver a controlled substance). He appeals alleging that the trial court erred in denying his motion to suppress evidence. We affirm.

The pertinent facts are not in dispute. On August 14, 1981, Detective Hughes from the Seattle Police Department received a call from Officer Allen of the Los Angeles Airport Drug Enforcement Detail, advising Hughes that Allen's office had received information from an unidentified informant that L. C. Davis would be arriving at Seattle–Tacoma Airport in the next few days with Percodan, Dilaudid,[1] and possibly heroin. The informant had described Davis in detail and said Davis was to deliver the narcotics to Leon Jackson of Seattle.

Seattle police officers checked the records of Davis and Jackson and discovered that Jackson was involved in drug related activities in the Seattle area and that Davis had an outstanding traffic warrant issued by the Seattle Municipal Court.

On August 17, the Seattle police were told by the Los Angeles Airport Drug Detail that they had received further information that Davis would be arriving in Seattle on

---

[1]The principal ingredient in the product commercially marketed as Percodan is oxycodone. *Physicians' Desk Reference* 912 (36th ed. 1982). The principal ingredient in the product marketed as Dilaudid is hydromorphone. *Physicians' Desk Reference,* at 1008. Oxycodone and hydromorphone are both defined as controlled substances under RCW 69.50.206.

August 18 carrying heroin. On August 18, Los Angeles police informed Seattle police that they had observed Davis board a flight to Seattle. Seattle police officers watched as a man meeting Davis' description exited the flight in Seattle. They followed Davis through the airport, noting he did not carry or claim any luggage.

Two officers contacted Davis as he approached a taxi. Officer Jensen asked for identification. Davis identified himself by a California driver's license as L. C. Davis. The officer asked for his airline ticket. Davis patted down his coat and said he left it on the plane. Davis answered other questions, stating he was in Seattle to see his father for 1 day and that he had no luggage. Davis refused to consent to a search. The officers then arrested Davis on the traffic warrant. Davis, reluctant to place his hands on the side of the building, was handcuffed and searched. The officers found two glass containers marked Dilaudid HCL.

The trial judge concluded that the officers had probable cause to arrest for the narcotics violation and that the traffic warrant "was just an additional sideline factor or basis for arrest." He therefore denied the motion to suppress. Davis was subsequently convicted for a violation of the controlled substances act.

Davis challenges the trial court's denial of his motion to suppress. He first argues that the arrest based on the traffic warrant was a mere pretext and, therefore, the arrest and subsequent search were invalid. Second, he argues that the police did not have probable cause to arrest for a violation of the controlled substances act. We first consider the issue of whether the evidence seized was invalid because it was based on an improper, "pretext," arrest.

■ One traditional exception to the Fourth Amendment's search warrant requirement is a search incident to a lawful arrest. *E.g., United States v. Robinson,* 414 U.S. 218, 224, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973). In order for evidence obtained from a search incident to arrest to be admissible, however, the arrest must be valid. "Where the arrest is only a sham or a front being used as an excuse for

making a search, the arrest itself and the ensuing search are illegal." *Taglavore v. United States,* 291 F.2d 262, 265 (9th Cir. 1961). Thus, the rule is that an arrest may not be used as a mere pretext to search for evidence of another crime. *State v. Michaels,* 60 Wn.2d 638, 644, 374 P.2d 989 (1962). The rule serves to prevent police officers from looking for or manufacturing grounds for an arrest for a minor offense in order to search for evidence of another suspected crime for which there is no probable cause for a search warrant.

Where there is a preexisting warrant, however, the basis for the rule preventing use of a pretext arrest to search for evidence of another crime no longer exists. There is no danger of police officers merely manufacturing grounds for an arrest. The arrest cannot be viewed as a sham. Accordingly, courts considering similar situations have indicated that where there is an outstanding warrant, an arrest and subsequent seizure of evidence of another crime is valid; the arrest is not considered a mere pretext. *United States v. Smith,* 468 F.2d 381 (3d Cir. 1972); *State v. Glasper,* 84 Wn.2d 17, 19, 523 P.2d 937 (1974). In light of these considerations we believe that where a preexisting warrant exists an arrest based thereon and subsequent search are valid.

Applying this rule to the present case we hold the trial court correctly denied Davis' motion to suppress the evidence seized. There was a preexisting warrant for Davis' arrest. Regardless of the arresting officers additional motives, they had the authority to arrest on that warrant. The subsequent search and seizure were proper.

The trial court's denial of the motion to suppress can be upheld on another equally valid basis. The officers here had probable cause to arrest for a narcotics violation.

■ A police officer has authority to arrest a person if he has probable cause to believe he is committing a felony. RCW 10.31.100. The United States Supreme Court recently revised the test for determining the existence of probable cause based upon information from an anonymous source. In *Illinois v. Gates,* __ U.S. __, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), the Court stated that a determination of

whether there is probable cause must be based on the totality of the circumstances even where an anonymous informant is involved.[2] *Gates,* 103 S. Ct. at 2329. *Gates* indicated that a properly corroborated anonymous tip may be sufficient to support a probable cause determination under the totality of the circumstances test. Corroboration of some of the informant's predictions suggests his other assertions are true. *Gates,* 103 S. Ct. at 2334. Also, inclusion of information about a person's future actions suggests that the information is accurate because it shows he had access to relatively confidential information about that person. *Gates,* 103 S. Ct. at 2335.

Applying the totality of the circumstances test to the present case in light of its particular application in *Gates,* we are convinced that the trial court correctly concluded the police officers had probable cause to arrest Davis for the narcotics offense. Here, as in *Gates,* much of the informant's information was corroborated, indicating the information was true. Davis arrived in Seattle on September 18, 1981, on a flight from Los Angeles as predicted. The informant's description of Davis was accurate. Additionally, the police confirmed that Jackson, to whom the informant stated the drugs were to be delivered, was involved in drug related activities in Seattle.

Moreover, the police officers here had more than merely the anonymous tip and its corroboration, they had independent evidence supporting their probable cause determination. The officers observed Davis leaving the airport without any luggage after arriving from Los Angeles, sug-

---

[2]While we are aware that *Illinois v. Gates,* __ U.S. __, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983) addressed the question of whether a magistrate had probable cause to issue a search warrant, we believe the case mandates use of the totality of the circumstances test to determine whether police officers had probable cause to make an arrest. Prior to *Gates,* courts applied the same test to determine whether, based on an anonymous informant's tip, there was probable cause to issue a search warrant or probable cause to arrest. *See State v. Jordan,* 30 Wn. App. 335, 338, 633 P.2d 890 (1981); 1 W. LaFave, *Search and Seizure* § 3.1(b) (1978). The new test established in *Gates,* therefore, is applicable when addressing either question.

gesting a possible intention to deal in drugs. In *Gates* the Court observed that the defendant's 1–night stay in Florida, an area known as a source of narcotics, suggested a drug run. *Gates,* 103 S. Ct. at 2334. Similarly, Los Angeles is recognized as a primary source of heroin for Seattle. Drug Enforcement Admin., *Narcotics Intelligence Estimate, The Supply of Drugs to the U.S. Illicit Market From Foreign and Domestic Sources in 1981,* at 20 figure 4 (1981). Thus, Davis' arrival from Los Angeles, especially without luggage, suggested his involvement in a drug transaction. While this information alone would not provide probable cause, and while the information from the anonymous tipster and its corroboration alone may not be sufficient, we believe the totality of the circumstances here provided probable cause to make an arrest for a narcotics violation. Because of our disposition, we need not address Davis' other assignment of error.

We affirm the trial court's decision.

DURHAM, A.C.J., and CORBETT, J., concur.

Reconsideration denied October 17, 1983.

Review denied by Supreme Court January 30, 1984.