[Nos. 31031-3-I; 31266-9-I.   Division One.   August 22, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v.
CHRISTOPHER JON CHAPIN, *Appellant.*

*James R. Dixon* of *Associated Counsel for the Accused,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *David F. Thiele, Deputy,* for respondent.

[As amended by order of the Court of Appeals September 4, 1994].

AGID, J. — Christopher Jon Chapin appeals his conviction for possession of cocaine (cause 31266-9-I) on the ground that the trial court erred in denying his motion to suppress evidence. He also appeals his conviction for possession of cocaine with intent to deliver (cause 31031-3-I) on the ground that the trial court erred in (1) instructing the jury that he bore the burden of proving entrapment by a preponderance of the evidence and (2) admitting evidence that was the subject of the motion to suppress in the possession case. We affirm both convictions.

I

FACTS

On March 22, 1987, while on road patrol, Officer David Zander of the Snohomish County Sheriff's Office saw a pickup truck pull out from behind an abandoned gas station. He

followed it and noticed that the rear license plate was displayed in the rear window of the vehicle, rather than mounted on the bumper as required by law.[1] When he stopped the vehicle, he observed that the passenger, Chapin, was not wearing a seatbelt. Zander asked Chapin and the driver for identification and discovered that Chapin had outstanding warrants for his arrest. Zander placed Chapin under arrest and searched the vehicle. He discovered a pager, open alcohol containers, a wallet containing approximately $1,100, a container with marijuana in it and a case containing drug paraphernalia and cocaine. Chapin was subsequently charged with possession of a controlled substance.

On July 29, 1988, while the possession case was pending, Chapin sold an ounce of cocaine to Douglas Woody, an undercover police informant. Chapin was arrested and charged with possession of cocaine with intent to deliver.

Before his trial on the possession charge, Chapin moved to suppress the evidence Zander seized from the vehicle. The motion was denied. The trial date for that case was then continued until after trial of the possession with intent to deliver case. In the first trial, the court admitted evidence that was the subject of Chapin's motion to suppress in the possession case. Chapin was ultimately found guilty of both charges.

## II
### MOTIONS TO SUPPRESS EVIDENCE
#### A
#### Pretext Stop

In the possession case, Chapin moved to suppress the evidence recovered from the vehicle, arguing that the license plate infraction was merely a pretext to enable Zander to investigate what he considered suspicious circumstances.[2]

---

[1] *See* RCW 46.16.240.

[2] At the suppression hearing, Zander gave the following responses to defense counsel's questions about his reason for stopping the vehicle:

[DEFENSE]: The only reason we're talking about where the license plate was was because you believed you needed a reason to stop them to talk to them about why they were behind the building, isn't that it?

The court denied Chapin's motion on the ground that the initial stop for the traffic infraction was valid. The court concluded that although the stop "ran concurrent with [Zander's] curiosity", the infraction was not a pretext for the stop because Zander had authority to stop the vehicle "independent of his suspicion of possible criminal activity occurring behind the gas station."

As a preliminary matter, we note that Zander did not seize the evidence in question pursuant to either the license plate or the seatbelt infraction. Rather, the search of the vehicle was incident to a lawful arrest.[3] Thus, the evidence obtained during the search is not subject to the exclusionary rule unless there is a sufficient nexus between the stop and Chapin's subsequent arrest. If there is a sufficient nexus, we must then decide whether the stop was in fact pretextual.

■ We conclude that Chapin has established the necessary nexus. Under the derivative evidence doctrine, secondary evidence discovered by exploitation of the initial illegality will be suppressed unless it is sufficiently attenuated from the initial illegality to be purged of the original taint. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. Stortroen*, 53 Wn. App. 654, 660-61, 769 P.2d 321 (1989). Under the derivative evidence doctrine we apply a but-for analysis. *State v. Aranguren*, 42 Wn. App. 452, 457, 711 P.2d 1096 (1985). Here, it is apparent that the evidence would not have been obtained but for Zander's decision to stop the vehicle to investigate the license plate infraction. The search here took place soon after the stop, and there were no intervening events to dis-

---

[ZANDER]:Basically, yeah.

. . . .

[DEFENSE]: So you admit the reason you stopped these people was because you wanted to know what was going on behind this closed-down garage.

[ZANDER]: Yes.

[3]Chapin's arrest was based on the outstanding arrest warrants. "A search of the passenger compartment of a vehicle, excluding locked containers, immediately after arrest for weapons or destructible evidence is valid even when a passenger, not the driver, is arrested". *State v. Hill*, 68 Wn. App. 300, 308, 842 P.2d 996, *review denied*, 121 Wn.2d 1020 (1993).

rupt the causal connection between the initial stop and the search incident to arrest.[4] Although Chapin's arrest was pursuant to valid warrants, it was not an intervening event under the attenuation doctrine.

Thus, we must determine whether Zander had a legal justification for the stop and, if so, whether that legal justification merely served as a pretext for the search of the vehicle. Under RCW 46.16.240, Zander had the authority to stop the vehicle to investigate the license plate infraction. Upon observing that Chapin was not wearing his seatbelt, a violation of RCW 46.61.688(3) and (5), Zander then had authority to request Chapin's identification pursuant to RCW 46.61.021(3).[5] Since he had legal authority to stop the vehicle and request Chapin's identification, the final inquiry is whether the stop for a license plate infraction was a pretext to allow Zander to conduct a further investigation of what he considered suspicious circumstances.

It is well established that a stop may not be used as a pretext to search for evidence. *United States v. Lefkowitz*, 285 U.S. 452, 76 L. Ed. 877, 52 S. Ct. 420, 82 A.L.R. 775 (1932); *State v. Michaels*, 60 Wn.2d 638, 644, 374 P.2d 989 (1962). "A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop." *United States v. Guzman*, 864 F.2d 1512, 1515 (10th Cir. 1988). A pretextual stop constitutes an unreasonable seizure that violates the Fourth

---

[4]*See United States v. Ceccolini*, 435 U.S. 268, 55 L. Ed. 2d 268, 98 S. Ct. 1054 (1978) (factors relevant to attenuation include the time elapsed, the occurrence of intervening events and the flagrancy of the initial illegality).

[5]RCW 46.61.021(3) provides in part:

Any person requested to identify himself to a law enforcement officer pursuant to an investigation of a traffic infraction has a duty to identify himself, give his current address, and sign an acknowledgment of receipt of the notice of infraction.

The requirement that "[a]ny person requested to identify himself . . . pursuant to an investigation of a traffic infraction" includes passengers of a vehicle stopped for a traffic infraction where the officer has an independent basis, such as the seatbelt violation here, for requesting a passenger's identification.

Amendment and, therefore, renders what would otherwise be a lawful search an unconstitutional one.[6] Consequently, where a search is conducted pursuant to a pretextual stop, any evidence obtained from the search must be suppressed under the exclusionary rule.

The pretext rule was designed to prevent the use of minor traffic violations as a justification to stop cars and search them in the hope of recovering evidence of a more serious crime for which the police lacked a legal basis to search.[7] The need for the pretext rule in the context of searches based entirely on minor traffic infractions has been largely obviated in this State by the Legislature's decriminalization of most minor traffic offenses, including the one for which the vehicle in this case was stopped.[8] Under case law and by statute, the police may not effect a custodial arrest for minor traffic infractions as defined by RCW 46.63.020 unless certain circumstances not applicable here apply.[9] Therefore, a vehicle may not ordinarily be searched pursuant to a traffic infraction. *Stortroen*, 53 Wn. App. at 654. The need for the pretext rule has not disappeared entirely, however, as the sequence of events in this case demonstrates. Although the police may not effect a custodial arrest for a minor traffic infraction, it is still possible to stop a vehicle as a pretext to detain a person suspected of other criminal activity, allowing the officer to determine whether a person in the vehicle has an outstanding warrant and, if so, to search the vehicle incident to arrest on the warrant.

---

[6]*See Guzman*, 864 F.2d at 1517 ("although the [United States Supreme] Court has never explicitly defined the contours of the pretext doctrine, precedent clearly suggests that the pretextual use of police power may violate the Fourth Amendment").

[7]*See Guzman*, 864 F.2d at 1515 ("[t]he classic example . . . occurs when an officer stops a driver for a minor traffic violation in order to investigate a hunch that the driver is engaged in illegal drug activity").

[8]*See* RCW 46.63.020.

[9]*See* RCW 46.64.015 (codifying the rule in *State v. Hehman*, 90 Wn.2d 45, 578 P.2d 527 (1978), that a custodial arrest for a minor traffic violation is generally impermissible if the defendant signs a promise to appear).

The parties dispute whether inquiries under the pretext rule should be governed by a subjective or an objective standard.[10] We reject the subjective approach under which the officer's motive in effecting the arrest forms the basis of the inquiry. *See, e.g., United States v. Smith*, 802 F.2d 1119, 1124 (9th Cir. 1986) ("[w]hether an arrest is a mere pretext to search turns on the motivation or primary purpose of the arresting officers"). We find this approach inconsistent with Fourth Amendment jurisprudence[11] and inherently problematic. A subjective approach would require courts to engage in the difficult, if not impossible, task of determining what an officer's mental process and personal motivations were in effecting a traffic stop.

■ We hold that the appropriate inquiry in determining whether a stop is pretextual is an objective one. In doing so, we adopt the reasoning of the Tenth Circuit in *United States v. Guzman*, 864 F.2d 1512 (10th Cir. 1988), insofar as it is consistent with our opinion. As the *Guzman* court noted, even among courts adhering to an objective approach, two different tests have emerged. The first is a "pure objective" approach under which the court inquires only whether the officer was acting pursuant to lawful authority. *See, e.g.,*

---

[10]This is an issue of first impression in Washington. The State's argument that this court rejected a subjective standard in *State v. Goodin*, 67 Wn. App. 623, 838 P.2d 135 (1992), *review denied*, 121 Wn.2d 1019 (1993) is not entirely correct. In *Goodin*, the court held that an officer's subjective purpose is irrelevant where he or she is acting pursuant to a warrant because the basis for the rule preventing pretext arrests no longer exists. We are not concerned here with whether the arrest was pretextual. As discussed *supra*, although Chapin was lawfully arrested pursuant to the warrants, our focus is on whether the initial stop was pretextual.

[11]The United States Supreme Court has repeatedly declined to review this issue. *See Cummins v. United States*, 502 U.S. 962, 116 L. Ed. 2d 448-49, 112 S. Ct. 428 (1991) (White, J., dissenting), and cases cited therein. However, the Court generally employs an objective analysis in resolving Fourth Amendment issues. *See Maryland v. Macon*, 472 U.S. 463, 470-71, 86 L. Ed. 2d 370, 105 S. Ct. 2778 (1985) ("[w]hether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances . . .' and not on the officer's actual state of mind at the time the challenged action was taken") (quoting *Scott v. United States*, 436 U.S. 128, 136, 56 L. Ed. 2d 168, 98 S. Ct. 1717 (1978)). In *Scott*, the Court held that an officer's state of mind will not invalidate his or her action "as long as the circumstances, viewed objectively, justify that action." 436 U.S. at 138.

*United States v. Causey*, 834 F.2d 1179 (5th Cir. 1987).[12] The second focuses on whether the officer's conduct was objectively reasonable by looking at whether he or she deviated from normal procedures in effecting a stop.

We decline to follow a pure objective approach for two reasons. First, if a court's inquiry is limited to determining whether the police had a lawful basis for making the stop which lead to the search and/or seizure, logically there can no longer be a pretext rule. This is because, under a pure objective approach, an officer's actions are per se reasonable if they are pursuant to lawful authority. The entire purpose of the pretext rule is to deter police from using their *lawful* authority to detain a person for a minor offense in order to investigate or search for evidence of a more serious offense.[13] Thus, the predicate for invoking the pretext rule is the officer's lawful act. Under a pure objective approach, there can logically be no pretextual stops because, where the officer is acting lawfully, his or her actions are defined as objectively reasonable. We reject this approach because it extinguishes the rule.

Second, under a pure objective approach, there is no basis for judicial review of an officer's use of the discretionary power to stop so long as the stop has a lawful basis. As the *Guzman* court noted,

> an objective test that asks no more than whether some set of facts might justify a given stop would permit arbitrary intrusions in situations such as traffic stops. Under such a test, thousands of everyday citizens who violate minor traffic regulations would be subject to unfettered police discretion as to whom to stop. . . .

---

[12]Our rejection of the pure objective approach is not inconsistent with *State v. Davis*, 35 Wn. App. 724, 669 P.2d 900 (1983), *review denied*, 100 Wn.2d 1039 (1984) and *Goodin*, at least where the search or arrest is based on a warrant without a prior investigatory stop. We agree with *Davis* that an arrest pursuant to a warrant, standing alone, does not fall within the pretext rule. Where, as here, an arrest pursuant to a warrant occurs as a direct result of an allegedly pretextual stop, the pretext rule applies to the stop.

[13]The pretext rule is not concerned with searches or seizures that are unlawful on their face. Evidence obtained as a result of clearly illegal actions, such as an investigatory stop without reasonable suspicion or a custodial arrest without a valid warrant or probable cause, is already subject to suppression under the exclusionary rule.

. . . Determining the constitutionality of intrusions by the prosecution's ability to justify them under some set of objective circumstances would undermine the . . . concern with limiting unreviewable discretion in the name of the objective test designed to safeguard that concern.

864 F.2d at 1516.

We think the better approach is the one articulated in *Guzman.* We hold that a stop is reasonable and, therefore, constitutional if a reasonable officer would have made the stop in the absence of an improper purpose.[14] Under this approach, the proper focus is not the arresting officer's subjective motivation, but rather, the objective reasonableness of his or her conduct. We determine the reasonableness of the officer's actions by the circumstances surrounding the stop, including whether the officer was following standard procedures or routine practices in effecting a stop. An officer's adherence to normal practices and procedures is significant in that an improper or pretextual motive may be inferred where there is a discernable departure from them.[15]

Applying the objective test to the facts of this case, we conclude that the stop for a license plate infraction was not pretextual because, under the same circumstances, a reasonable officer would have made the stop. Zander was on road patrol when he noticed the traffic infraction. One of the normal duties of an officer on road patrol is to enforce traffic regulations. There is nothing to suggest that he departed from normal procedures in making the stop. Zander also testified that running a warrant check is a standard procedure when investigating traffic infractions.[16] Although Zander may also

[14]*See Guzman,* 864 F.2d at 1515; 1 Wayne R. LaFave, *Search and Seizure* § 1.4, at 22 (2d ed. Supp. 1994 pocket part) ("[I]f the police stop X's car for minor offense A, and they 'subjectively hoped to discover contraband during the stop' so as to establish serious offense B, the stop is nonetheless lawful if 'a reasonable officer *would* have made the stop in the absence of the invalid purpose.' ").

[15]This is not the only factor that may be relevant in determining whether a stop was a pretext in a particular case. However, it is highly probative of whether a reasonable officer would have stopped the vehicle under the same circumstances.

[16]We do not, by adopting the objective approach, intend to turn suppression hearings into a lengthy debate over the normal practices and procedures of the police agency in question. Normally, the testimony of the officer involved in the stop should suffice to establish what those practices and procedures are.

have stopped the vehicle in order to satisfy his curiosity, his actions were objectively reasonable. The court properly denied Chapin's motion to suppress evidence.

## B

### Probable Cause for Arrest Warrants

Chapin also moved to suppress evidence on the ground that the search of the vehicle was invalid because the warrants for Chapin's arrest were not supported by probable cause. At the suppression hearing, the State supported the arrest with a bench warrant from Chelan County, an order for that bench warrant indicating that Chapin failed to comply with probation conditions, and an arrest warrant from Grant County stating that Chapin was driving while his license was suspended. Chapin challenged the Grant County warrant on the ground that it contained only a conclusory statement and did not set forth the basis of the complaining officer's knowledge. The warrant states:

> Trooper J. W. Cowan #543 has this day complained in writing, under oath, to the undersigned, that on or about the 8th day of July, 1986, in said County and State Chris J. Chapin did then and there wilfully and unlawfully operate a motor driven vehicle over and along the public highways of the State of Washington while his privilege to drive was suspended . . ..

Chapin argued that, because the warrant does not set forth the basis of the officer's knowledge that Chapin was driving and that his license was suspended, it was issued without probable cause. The court ruled that it was reasonable to infer that the officer personally saw Chapin operating a motor vehicle and had knowledge that his license was suspended and that the warrant was, therefore, supported by probable cause.

We reject Chapin's argument. An arrest warrant is presumed valid. *See State v. Frye*, 26 Wn. App. 276, 279, 613 P.2d 152 ("[t]here is a presumption of validity with respect to the search warrant's supporting affidavit"), *review denied*, 94 Wn.2d 1008 (1980). Although "mere conclusory statements in an *affidavit* cannot alone establish probable cause" (italics ours), *State v. Trasvina*, 16 Wn. App. 519, 524, 557 P.2d 368

(1976), *review denied*, 88 Wn.2d 1017 (1977), Chapin did not produce or challenge the underlying affidavit. Rather, he challenged only the facial validity of the warrant. The burden of proof in a motion to suppress evidence is on the moving party. 16 Wn. App. at 523. When a challenge to a warrant requires evidence beyond the face of the warrant, the "question as to whether the warrant was valid must be resolved in favor of validity [where] no evidence [is] offered to alter this conclusion." *State v. Fisher*, 96 Wn.2d 962, 968, 639 P.2d 743, *cert. denied*, 457 U.S. 1137 (1982). Chapin did not produce evidence of circumstances beyond the face of the warrant, although, as the State points out, he could have obtained a copy of the officer's complaint on which it was based.

In addition, the arrest was valid pursuant to the Chelan County warrant. Although Chapin initially challenged the Chelan warrant, he produced no evidence at the suppression hearing in support of that challenge. This issue has not been properly preserved for appeal.[17] Even if it had been properly preserved, as with the Grant County warrant, Chapin's failure to produce evidence of circumstances beyond the face of the presumptively valid warrant would require us to reject his argument.[18]

## III

### ENTRAPMENT INSTRUCTION

At the possession with intent to deliver trial, Chapin requested and received an entrapment instruction. The

---

[17]*See* RAP 2.5(a); *State v. Lynn*, 67 Wn. App. 339, 835 P.2d 251 (1992) (alleged constitutional errors are "manifest" under RAP 2.5(a) and, thus, properly raised for the first time on appeal only where they are "unmistakable, evident or indisputable").

[18]This analysis disposes of Chapin's contention that, because the warrants and, hence, the search were invalid, the court erred in permitting Zander to testify to evidence obtained in connection with the possession case at the possession with intent to deliver trial. Zander testified that, during the search incident to arrest, he recovered a pager and the pager went off. Zander called the number displayed and told the person answering that Chapin was not available. The person stated that he wanted some "white". Zander asked how much and the person responded "a half". Chapin presented an entrapment defense at that trial. The State introduced Zander's testimony about the pager under ER 404(b) to establish intent and knowledge in order to undermine Chapin's claim that he was not predisposed to sell cocaine.

court instructed the jury that a defendant is required to prove entrapment by a preponderance of the evidence. Chapin assigns error to this instruction on the ground that a defendant is only required to produce sufficient evidence to create a reasonable doubt as to his guilt.[19] In light of the Supreme Court's opinion in *State v. Riker*, 123 Wn.2d 351, 869 P.2d 43 (1994), we hold that the instruction was proper.

■ In *Riker*, the Supreme Court considered the burden of proof necessary to establish a duress defense, *see* RCW 9A.16.060, and held that the defendant must establish duress by a preponderance of the evidence. It rejected Riker's argument that she should have only been required to prove the defense to the extent that it created a reasonable doubt in the minds of the jurors as to her guilt. 123 Wn.2d at 366. The court reasoned that

> a defense of duress *admits* that the defendant committed the unlawful act, but pleads an excuse for doing so. The . . . defense . . . does not negate an element of an offense, but pardons the conduct even though it violates the literal language of the law. A successful duress defense does not create a reasonable doubt that the defendant did the crime charged, but rather condones the defendant's admittedly unlawful conduct. Any burden of proof for duress which literally relies on the ability of the defendant to create a reasonable doubt would therefore be impossible to meet, since a duress defense necessarily allows for no doubt that the defendant did the acts charged.

(Citations omitted.) 123 Wn.2d at 367-68. Because there is no difference between the defenses of entrapment and duress that would render this reasoning inapplicable to the issue here,[20] we conclude that *Riker* mandates a similar result in this case. Thus, we hold that the trial court properly instructed the jury that Chapin was required to prove entrapment by a preponderance of the evidence.

---

[19]RCW 9A.16.070 is silent as to the level of proof required to prove entrapment.

[20]Entrapment, like duress, is a defense that admits that the defendant committed the crime and seeks to excuse the unlawful conduct. *See* RCW 9A.16.070; *see also State v. Stegall*, 69 Wn. App. 750, 765, 850 P.2d 571, *review granted*, 122 Wn.2d 1016 (1993). For a discussion of the quantum of proof necessary to entitle a defendant to an entrapment instruction, *see State v. Trujillo*, 75 Wn. App. 523, 883 P.2d 329 (1994).

In so holding, we necessarily disapprove of the revised WPIC 18.05 which provides that the defendant must raise a reasonable doubt as to his or her guilt to prove entrapment.[21] The committee's approach to the burden of proof is not surprising given the significant confusion about this issue for defenses in which the applicable statute is silent on the defendant's burden and the defense does not negate an element of the offense.[22] As the court in *Riker* noted, language in *State v. Bromley*, 72 Wn.2d 150, 432 P.2d 568 (1967) (burden of proof on duress defense) has been the source of much of this confusion. 123 Wn.2d at 367 ("[t]he burden of proof described in *Bromley* is perplexing at best"). This issue has been considered in the context of other defenses, leading some courts to conclude that, in the absence of a legislative enactment, a defendant need establish an affirmative defense only to the extent necessary to create a reasonable doubt as to his or her guilt. *See, e.g., State v. Hundley*, 72 Wn. App. 746, 751, 866 P.2d 56 (1994), and cases cited therein. The *Riker* court concluded, however, that "[t]he only logical reading of *Bromley* is that, as with most affirmative defenses which do not negate an element of the crime, the defendant must prove duress by a preponderance of the evidence." 123 Wn.2d at 368-69. Entrapment is just such a defense. Accordingly, we hold that the trial court properly instructed the jury that the defendant must prove entrapment by a preponderance of the evidence.

The convictions are affirmed.

GROSSE and KENNEDY, JJ., concur.

Review denied at 125 Wn.2d 1024 (1995).

---

[21]The WPIC was revised prior to the decision in *Riker*.

[22]The committee relied on dicta in *State v. Ziegler*, 19 Wn. App. 119, 575 P.2d 723 (1978), to the effect that the defendant is only required to produce evidence of entrapment which is sufficient to create a reasonable doubt. 19 Wn. App. at 122.