[No. 33327-5-I.   Division One.   August 28, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH L. WILEY, *Appellant*.

---

[36]*State v. Weiand*, 66 Wn. App. 29, 34 n.10, 831 P.2d 749 (1992).

[37]RCW 9.94A.010(3).

118

*Kenneth R. Scearce*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Rian K. Ebesugawa, Deputy*, for respondent.

PER CURIAM. — Kenneth Wiley appeals his conviction for possession of cocaine, arguing that the trial court's instruction on the defense of unwitting possession was an incorrect statement of the law. He also contends his trial counsel was ineffective for failing to object to the instruction. Because the instruction correctly stated the law, we affirm.

## FACTS

On February 8, 1993, Seattle police officers conducted a "reverse sting" operation in downtown Seattle. The operation involved undercover officers posing as drug dealers.

Officer Olivares was the undercover "dealer" that eve-

ning. He testified that Wiley and another man approached him and wanted to buy cocaine. Officer Olivares then sold Wiley some cocaine. The transaction "was really quick," and Wiley glanced briefly at the cocaine during the transaction.

Officer Myer observed the transaction. He testified that he recognized Wiley's friend as a person he had previously had contacts with in "narcotics situations." He further testified that during the transaction, Wiley's friend stepped away and looked left and right and up and down the street. The transaction was videotaped, and the tape was played for the jury.

On cross examination, Myer testified that "bunk" is a substance that resembles cocaine but is not cocaine or a controlled substance. He conceded that he cannot always tell the difference between real and "bunk" cocaine, and that some dealers sell "bunk." On redirect, he stated that buyers do not, in his experience, go out looking for "bunk" because they want narcotics to use.

One of the arresting officers testified that immediately following the transaction, he saw Wiley jaywalking across the street. When the officer exited his car, Wiley ran "a little bit faster across the intersection." The officer chased Wiley across the intersection, grabbed him, and told him he was a police officer. Another arresting officer testified that the officers ordered Wiley to get down on the ground after they identified themselves, but he did not comply.

According to the arresting officers, Wiley struggled upon apprehension, but the officers eventually forced him to the ground. Once Wiley was on the ground, one of the officers noticed suspected narcotics in his hand. The narcotics were stuck to his hand and he was trying to get rid of them. They eventually came loose and rolled under Wiley's chin. Wiley then attempted to get the bindle in his mouth. The officers felt Wiley was trying to swallow the bindle, so they applied an anti-swallowing hold. One of them testified that swallowing narcotics is a common response of suspects in such situations.

Wiley testified that he was waiting at a bus stop when he ran into his friend. The friend told him that there were police officers in the area selling drugs, and that he had seen them sell drugs to someone who was arrested. Wiley's friend "was pretty convinced" that Officer Olivares was a police officer because he was "neat and healthy and well fed." He also believed the officer/dealer was selling "bunk."

Wiley told his friend that the officer must be selling "bunk" "because [police] couldn't be selling real cocaine, because it is illegal." He then asked his friend "[w]hat would make it legal for them to sell it?" According to Wiley, his friend then gave him $15 and asked him to "go and see what [the suspected officer/dealer would] say." Wiley agreed, and told his friend "if they sell me bunk, you are out of 15 bucks." Wiley understood that if the dealer sold him bunk, his friend would ask the dealer for his money back, but if it was cocaine, his friend would keep it. Wiley was "convinced," however, that the officer was selling bunk. He testified that he wouldn't have made the purchase if he thought he would receive real cocaine.

Wiley testified that he and his friend approached Olivares and asked if he was a police officer. Olivares said "no." Olivares then asked if they wanted to buy some coke, and Wiley said "yes." After the transaction, Wiley's friend said he wanted to check out the bindle across the street. Wiley "jogged" across the street because of the heavy traffic. He claimed his friend did not cross the street because the traffic was coming too fast.

Wiley maintained he did not hear or see any officers until after he was knocked to the ground, and denied trying to swallow the bindle. He conceded that he originally gave the officers an alias, but did so because he was afraid and didn't want his name associated with drugs. Wiley admitted that he had a prior burglary conviction.

On cross examination, Wiley stated he was surprised he was arrested even though he knew that someone dealing with the officer/dealer had been arrested. When asked

why he was surprised, he said he and his friend felt that the arrested person must have sold to, not purchased from, the officer/dealer. He explained that he believed an officer could legally possess cocaine if he or she possessed it by virtue of an undercover buy, and that an officer buying cocaine could arrest the seller. He did not believe, however, that officers could legally possess real cocaine for distribution to buyers; therefore, since they could only sell bunk, there was no danger of arrest.

The court instructed the jury that a person is not guilty of possession of cocaine if the person did not know that the substance was cocaine. The instruction stated that the defendant had the burden of proving unwitting possession by a preponderance of the evidence. Defense counsel did not object to that portion of the instruction.

The jury convicted Wiley as charged. This appeal followed.

## DECISION

■ Wiley argues for the first time on appeal that the court's unwitting possession instruction misstated the law to the extent it required him to prove that defense by a preponderance of the evidence.[1] He contends he only had the burden of creating a reasonable doubt as to whether he knew the substance was cocaine.

The other divisions of this court have reached different conclusions on this issue. Division Three has held that unwitting possession must be proved by a preponderance of the evidence. *State v. Knapp*, 54 Wn. App. 314, 773 P.2d 134,

[1]Under RAP 2.5(a), we need not consider the argument since it is raised for the first time on appeal and Wiley does not argue that the alleged error falls within any exception in the rule. *State v. Sanders*, 66 Wn. App. 878, 888 n.3, 833 P.2d 452 (1992) (noting defendant "failed to argue on appeal that this alleged error is constitutional and thus may be reviewable absent an adequate exception below pursuant to RAP 2.5(a)"), *review denied*, 120 Wn.2d 1027 (1993); *In re Marriage of Olson*, 69 Wn. App. 621, 625, 850 P.2d 527 (1993) (refusing to review argument and noting appellant did not argue that an exception in RAP 2.5(a) applied). We have exercised our discretion to review the alleged error, however, because of the absence of any published decisions in this division addressing the issue.

*review denied*, 113 Wn.2d 1022 (1989); *State v. Quintero-Quintero*, 60 Wn. App. 902, 906, 808 P.2d 183 (1991). Division Two, on the other hand, recently held that a defendant need only create a reasonable doubt that he or she unwittingly possessed a controlled substance. *State v. Hundley*, 72 Wn. App. 746, 866 P.2d 56 (1994), *aff'd on other grounds*, 126 Wn.2d 418, 895 P.2d 403 (1995). That holding was subsequently criticized by the State Supreme Court, however, in *State v. Hundley*, 126 Wn.2d 418, 419, 895 P.2d 403 (1995). The court noted that Division Two's holding predated *State v. Riker*, 123 Wn.2d 351, 869 P.2d 43 (1994) and was of doubtful validity given *Riker*'s analysis. A review of *Riker* convinces us that Division Two's holding in *Hundley* is an incorrect statement of the law.

In *Riker*, the Supreme Court considered the burden of proof necessary to establish a duress defense and held that a defendant must establish duress by a preponderance of the evidence. The court stated that "[g]enerally, an affirmative defense which does not negate an element of the crime charged, but only excuses the conduct, should be proved by a preponderance of the evidence." *Riker*, 123 Wn.2d at 368. Significantly, the court distinguished and/or disapproved of the same line of cases cited by Division Two in support of its contrary holding that a defendant must normally establish an affirmative defense "only to the extent necessary to create a reasonable doubt as to the guilt of the defendant." *Hundley*, 72 Wn. App. at 751.[2]

In light of the Supreme Court's decisions in *Riker* and

---

[2]The *Hundley* court cited *State v. Bromley*, 72 Wn.2d 150, 155, 432 P.2d 568 (1967), *State v. Rosi*, 120 Wash. 514, 518, 208 P. 15 (1922), *State v. McAlister*, 71 Wn. App. 576, 860 P.2d 412 (1993), and several other Court of Appeals decisions. *Hundley*, 72 Wn.2d at 751. The *Riker* court found *Bromley*'s language misleading, distinguished *Rosi* because it involved a defense that negated an element of the crime, and expressly disapproved of *McAlister* "to the extent that it suggests the defendant's burden of proof [on a duress defense] is something other than a preponderance of the evidence." *Riker*, 123 Wn.2d at 369 n.8. In fact, the Supreme Court remanded *McAlister* to Division Two for reconsideration in light of *Riker*, and the opinion was subsequently withdrawn. *State v. McAlister*, 123 Wn.2d 1019, 870 P.2d 973 (1994).

*Hundley*, we decline to follow Division Two's holding in *Hundley*. Instead, we hold that because the defense of unwitting possession does not negate an element of the crime of possession,[3] and because there is no difference between the defense at issue here and the defense at issue in *Riker* that would render *Riker*'s analysis inapplicable, unwitting possession must be proved by a preponderance of the evidence.[4] The instruction in this case thus correctly stated the law and defense counsel was not ineffective for failing to object to the instruction on the ground asserted by Wiley here.[5]

Affirmed.

---

[3]*Hundley*, 72 Wn. App. at 750; *State v. Johnson*, 119 Wn.2d 143, 146, 829 P.2d 1078 (1992); *State v. Sims*, 119 Wn.2d 138, 142, 829 P.2d 1075 (1992).

[4]This result is consistent with our decision in *State v. Chapin*, 75 Wn. App. 460, 879 P.2d 300 (1994), *review denied*, 125 Wn.2d 1024 (1995), where we followed *Riker* and held that because the defense of entrapment does not negate an element of an offense, it must be proved by a preponderance of the evidence. *Chapin*, 75 Wn. App. at 471.

[5]Although we have not decided this case on the basis of harmless error, we note that a strong argument can be made that any error was harmless beyond a *reasonable* doubt. Wiley's explanation that he intended to purchase "bunk" cocaine from the officers was implausible and inconsistent with his conduct and the actions of his friend. His assertion that he and his friend were willing to spend money on a substance they were convinced was worthless, were willing to purchase that worthless substance from a probable undercover police officer, and were willing to proceed with the purchase even though Wiley's friend had earlier witnessed the arrest of a person dealing with the police officer/dealer, is contrary to common sense and human nature.

In addition, Wiley's explanation was seriously undermined by the officers' testimony. They testified that Wiley's friend made movements like a lookout during the transaction. They also testified that when apprehended, Wiley struggled, did not get down on the ground despite being instructed to do so, attempted to dump the cocaine, attempted to get the cocaine into his mouth, and gave an alias. Such behavior is plainly inconsistent with Wiley's claim that he and his friend thought they were purchasing "bunk" and were doing nothing illegal.