6 P.3d 602 (2000)
101 Wash.App. 732
STATE of Washington, Respondent,
v.
Minh HOANG, Appellant.
No. 44393-3-I.
Court of Appeals of Washington, Division 1.
August 7, 2000.
*603 Jason Brett Saunders, Seattle, for Appellant.
Catherine Marie Myers, King Co. Prosecutor's Office, Seattle, for Respondent.
KENNEDY, J.
Relying on State v. Ladson, 138 Wash.2d 343, 979 P.2d 833 (1999), and State v. DeSantiago, 97 Wash.App. 446, 983 P.2d 1173 (1999), Minh Hoang contends that his possession of cocaine conviction must be reversed because the cocaine was discovered as the result of a pretextual traffic stop in violation of article 1, section 7 of the Washington constitution. But the trial court's unchallenged findings of fact fully support its conclusion that this traffic stop was not unconstitutionally pretextual, and it is clear from the record that the trial court considered the totality of the circumstances in making that determination, as required by Ladson. Accordingly, we affirm.

FACTS
On November 6, 1997, Seattle Police Officer Aaron Kamalu was on routine patrol duty. He had come on duty at 3:30 a.m., and was scheduled to work until half-past noon that day. A few minutes after 4 a.m., Officer Kamalu was parked with the lights of his patrol vehicle out in the vicinity of Rainier Avenue South and South Garden Street, a part of his regular beat. This is a Vietnamese neighborhood in Seattle that is known to be a narcotics hotspot. Notwithstanding the late hour, a number of individuals were milling about on the street, and the officer was observing their activities. Based on the officer's description of the location of his vehicle, it is safe to assume that none of these individuals knew they were being observed by police.
As the officer watched, a maroon-colored Honda Civic slowly drove southbound along Rainier Avenue South, and pulled to a stop next to a group of individuals. These individuals approached the car, and appeared to talk with the driver. A moment or two later the vehicle moved slowly toward another group of individuals, and again pulled to a stop. These individuals also approached the car, and a conversation ensued. The officer suspected, based on these observations and his experience patrolling this neighborhood, that a drug deal might be going down. But he saw no exchanges take place. As the officer continued to observe, the vehicle started moving again and made a turn onto South Garden Street. That street ends in a cul-de-sac. The vehicle turned around and proceeded back toward Rainier Avenue South. The vehicle stopped at the stop sign that controls that intersection, and then made a left-hand turn, northbound onto Rainier Avenue South, without signaling. The officer activated his overhead rotating lights and front flashers and pulled in behind the Honda Civic, bringing it to a stop within about a block.
Minh Hoang, a Vietnamese man, was the driver of the Honda Civic. He was alone in the car. When the officer approached the driver's side, he noticed that Hoang was holding his right arm across his body with his right hand near his left hip. This seemed odd to the officer. The officer also noticed that the Honda Civic had no license plates.
Officer Kamalu asked Hoang for his driver's license, and the registration and certificate of insurance for the vehicle. Hoang could not produce a driver's license, but provided the officer with his name and birthdate. The officer utilized the computer in the patrol car to check the status of Hoang's driver's license, and learned that the license had been suspended. The officer then returned to the Honda Civic, asked Hoang to step from the vehicle, and placed him under arrest for driving while his license was suspended. Placing Hoang in the patrol car with his hands cuffed behind his back, the officer proceeded to search the passenger compartment of the Honda Civic, starting with the driver's side. There, in plain view, in the space between the driver's seat and driver's door, near where Hoang had rested *604 his right hand on his left hip, the officer saw a small rock that he believed, based on his experience, to be cocaine. The officer field tested the rock and received a positive result for cocaine. He then read Hoang his Miranda[1] rights and showed him the rock. Hoang claimed that a black man had tossed the rock into his vehicle.
Officer Kamalu then obtained the vehicle identification number for the Honda Civic, locked the vehicle, and left it legally parked. He drove Hoang to the precinct station and booked him for possession of cocaine. The officer did not issue a citation for failing to signal the left-hand turn, driving while license suspended, or driving without license plates.
The State charged Hoang with possession of cocaine. At the CrR 3.6 suppression hearing, Officer Kamalu testified to the above facts. In response to questioning, he explained that he pulled Hoang over for failing to signal a left turn. But for the failure to signal the turn, the officer testified that he would not have stopped the vehicle. In response to further questioning, he explained that it was not his practice to issue a citation for traffic violations where felony charges would ultimately be filed.
Hoang also testified at the suppression hearing. He admitted that the left-turn signal on the Honda Civic was not in working order on the night of his arrest. His testimony differed from that of the officer in several respects, none of which are relevant to the issue in this appeal. Thus, we need not summarize the remainder of his testimony.
Defense counsel argued that the stop for the traffic infraction was pretextual. Because the suppression hearing was held some five months before the Supreme Court handed down its opinion in State v. Ladson, 138 Wash.2d 343, 979 P.2d 833 (1999), neither counsel articulated the "totality of the circumstances" requirement found in that case, and both sides argued that the question before the court was whether the traffic stop was objectively reasonable. See id. at 359, 979 P.2d 833. In summing up, the trial court this case found that the traffic stop was objectively reasonable, but also noted the following circumstances supporting the ruling that the stop was not pretextual:
[T]he officer did nothing to depart from [normal procedure] in making a stop to enforce traffic regulations.... [W]hen he made contact with the Defendant, it was very clear in the testimony that the officer did not inquire about anything except [ ] questions that would be asked on a routine traffic stop: Do you have a driver's license, can I see your registration and your insurance [] certificate. There were no questions about what he was doing there at that time of the morning.
Report of Proceedings at 129-30.
The trial court subsequently entered the following written finding of fact:
[Officer] Kamalu was acting within his normal traffic control duties when he acted by pulling the defendant over for failing to signal. The court finds that [Officer] Kamalu would have made the same decision to contact the defendant in the course of a general traffic patrol. The court finds that there is no issue of a "pretext" stop on this record.
Clerk's Papers at 26.
The court also found that Officer Kamalu was credible with respect to the reason for the traffic stop, and that the traffic stop was appropriate and supported by the observation of a traffic violation. The court concluded that the subsequent arrest was justified by the determination that Hoang's driver's license was suspended, and that the search leading to the discovery of the cocaine was a valid search incident to arrest. Accordingly, the court denied the request to suppress the cocaine. The case proceeded to trial and Hoang was convicted as charged. This appeal followed.

DISCUSSION
Hoang assigns error to that portion of the trial court's CrR 3.6 findings set forth above, but only insofar as the finding may be construed as a conclusion of law, and he does *605 not assign error to any of the trial court's other findings of fact. Unchallenged findings of fact following a CrR 3.6 suppression hearing are accepted as verities upon appeal, and will not be reviewed by the appellate court. State v. Hill, 123 Wash.2d 641, 644-47, 870 P.2d 313 (1994). "[O]ur review in this case is limited to a de novo determination of whether the trial court derived proper conclusions of law from those [unchallenged] findings" State v. Armenta, 134 Wash.2d 1, 9, 948 P.2d 1280 (1997) (citing Hill, 123 Wash.2d at 647, 870 P.2d 313).
"[P]retextual traffic stops violate article 1, section 7 [of the Washington constitution] because they are seizures absent the `authority of law' which a warrant would bring." Ladson, 138 Wash.2d at 358, 979 P.2d 833. The essence of every pretextual traffic stop is that "the police are pulling over a citizen, not to enforce the traffic code, but to conduct a criminal investigation unrelated to the driving." Id. at 349, 979 P.2d 833. "When determining whether a given stop is pretextual, the court should consider the totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior." Id. at 358-59, 979 P.2d 833. The Ladson court explicitly disapproved State v. Chapin, 75 Wash.App. 460, 464, 879 P.2d 300 (1994), insofar as Chapin held that the test for pretext is objective only. Ladson, 138 Wash.2d at 359, 979 P.2d 833. This is because "our constitution requires [that] we look beyond the formal justification for the stop to the actual one. In the case of pretext, the actual reason for the stop is inherently unreasonable, otherwise the use of pretext would be unnecessary." Id. at 353, 979 P.2d 833. Nevertheless, the police may still enforce the traffic code, so long as they do not use that authority as a pretext to avoid the warrant requirement for an unrelated criminal investigation. Id. at 357, 979 P.2d 833.
In Ladson, two police officers working on proactive gang patrol admitted that, although they did not make routine traffic stops while on gang patrol, they used traffic infractions as a means to pull people over in order to initiate contact and questioning regarding unrelated criminal activityindeed, they followed people who aroused their suspicions, hoping to see a traffic infraction in order to have a legal reason to pull them over. Id. at 346, 979 P.2d 833. The trial court in that case factually found that one of the officers selectively enforced traffic violations depending on whether he believed there was a potential for intelligence-gathering in such stops. Id. After following a vehicle being driven by an individual the officers believed might be involved in drug dealing, for a number of blocks, the officers found a legal reason to pull the vehicle over: the license tabs had expired. Id. Upon stopping the vehicle, the officers learned that the driver of the vehicle had a suspended driver's license. They arrested the driver, and searched the vehicle incident to that arrest. Id. Finding a handgun under a jacket belonging to the passenger, the officers arrested him, as well, and searched him, finding several baggies of marijuana. Id. at 346-47, 979 P.2d 833. The trial court, finding the stop to have been pretextual, suppressed the evidence. Id. at 347, 979 P.2d 833. The Court of Appeals reversed. Id. The Supreme Court reversed the Court of Appeals, reinstating the trial court's ruling. Id. at 360, 979 P.2d 833.
In State v. DeSantiago, 97 Wash.App. 446, 451-53, 983 P.2d 1173 (1999), the court squarely ruled that a police officer's subjective motive for stopping a vehicle may invalidate an otherwise objectively valid traffic stop. There, similarly to Ladson, 138 Wash.2d at 346, 979 P.2d 833, the trial court found that the officer saw the defendant drive away from an apartment complex that was a narcotics hotspot, followed the defendant in the hope of finding a legal reason to stop him, and after seeing the defendant make an illegal left-hand turn, did stop him. DeSantiago, 97 Wash.App. at 448-49, 983 P.2d 1173. The defendant was found to be driving without a license or insurance, and there was an outstanding warrant for his arrest. Id. at 449, 983 P.2d 1173. The officer arrested the defendant, and while searching the vehicle incident to the arrest, found methamphetamine and a gun. Id. The defendant was subsequently convicted of unlawful possession of the methamphetamine and the gun. Id. at 448-49, 983 P.2d 1173. The *606 Court of Appeals reversed the conviction because the drug and gun were the fruits of an unconstitutional pretextual traffic stop. Id. at 452-53, 983 P.2d 1173. In so ruling, the court rejected the State's argument that Ladson was distinguishable because the officers in Ladson were on gang patrol and the officer in DeSantiago was a patrol officer. Id. The court opined that, regardless of his title, the officer was doing the work of a narcotics detective and used his authority to make a traffic stop, not to enforce the traffic code, but rather to conduct a criminal investigation unrelated to the drivingthe essence of every pretextual traffic stop. Id.; see also Ladson, 138 Wash.2d at 349, 979 P.2d 833.
In this case. Hoang argues that the facts are indistinguishable from those in Ladson and DeSantiago, therefore, reversal is required as a matter of constitutional law. We disagree.
The trial court in Ladson found the stop to be pretextual and suppressed the evidence. Ladson, 138 Wash.2d at 347, 979 P.2d 833. The Court of Appeals reversed the trial court and the Supreme Court reversed the Court of Appeals. Id. at 360, 979 P.2d 833. In DeSantiago, the trial court found the officer's subjective motivation for the stop to have been pretextual, but refused to suppress the evidence because the traffic stop was objectively reasonable. DeSantiago, 97 Wash. App. at 449, 983 P.2d 1173. The Court of Appeals reversed the trial court. Id. at 453, 983 P.2d 1173. But here, in unchallenged findings, the trial court found that Officer Kamalu was acting within the scope of his normal traffic control duties when he made the stop, and would have made the same decision to pull Hoang over for failing to signal a left-hand turn even if the officer had not just observed Hoang twice make contact with people on the street. We cannot review this unchallenged finding of fact, but can only examine whether it supports the trial court's determination that this stop was not unconstitutionally pretextual. See Hill, 123 Wash.2d at 644-47, 870 P.2d 313. And that depends in turn upon whether the trial court applied the standard required by Ladson in making this determination, that is, whether the trial court considered the "totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior." Ladson, 138 Wash.2d at 358-59, 979 P.2d 833.
It is clear from the record that the trial court did consider the totality of the circumstances, including both the subjective intent of the officer and the objective reasonableness of his behaviorthis notwithstanding the fact that Ladson was not handed down until some five months after the suppression hearing in this case, and notwithstanding the fact that both counsel argued that the Chapin objective reasonableness standard applied. See Ladson, 138 Wash.2d at 358-59, 979 P.2d 833; Chapin, 75 Wash.App. at 464, 879 P.2d 300. In summing up its oral ruling, the trial court observed that, upon making the stop, the officer asked only the questions that would be asked on a routine traffic stop: Do you have a driver's license? May I see the vehicle registration? May I see the certificate of insurance? He asked no questions regarding what Hoang was doing in that area at that time of morning. We also observe that, unlike Ladson and DeSantiago, here, the officer did not follow Hoang hoping to find a legal reason to stop him: Hoang made a left-hand turn without signaling right before the officer's eyes, and the officer immediately pulled him over, just as he would have for any other routine stop for a traffic infraction committed in his presence.
Hoang's position in this appeal is tantamount to a contention that this court may look behind an unchallenged finding of fact that the traffic stop in question would have been made in any event, and conclude instead as a matter of law that the stop was unconstitutionally pretextual merely because the officer who made the stop first saw the vehicle while observing a narcotics hotspot and saw the driver of the vehicle engage in behavior that could be entirely innocent (such as asking for directions) or not entirely innocent (such as asking if drugs were for sale)and because the officer, not being entirely naïve, suspected that the behavior was not entirely innocent. But Ladson does not stand for that proposition. Under Ladson, even patrol officers whose suspicions have *607 been aroused may still enforce the traffic code, so long as enforcement of the traffic code is the actual reason for the stop. What they may not do is to utilize their authority to enforce the traffic code as a pretext to avoid the warrant requirement for an unrelated criminal investigation. Ladson, 138 Wash.2d at 357-58, 979 P.2d 833.
That Officer Kamalu ultimately elected not to cite Hoang for turning without signaling, or for driving while his license was suspended, or for driving without license plates on the car, and instead to book him only for unlawful possession of cocaine are among the factors to be considered in determining the officer's subjective intent for making the stop, but are not dispositive. Here, even up to the date of the suppression hearing, the prosecutor was still considering the possibility of charging Hoang with driving while license suspended in the second degreebut ultimately decided not to do so. We find nothing in Ladson that limits prosecutorial discretion with respect to charging decisions, or that requires police to issue every conceivable citation as a hedge against an eventual challenge to the constitutionality of a traffic stop allegedly based on pretext.
In sum, here the trial court entered unchallenged findings of fact that fully support its conclusion of law that this stop was not unconstitutionally pretextual, and in making that determination the trial court applied the standard required by Ladson, 138 Wash.2d at 359, 979 P.2d 833, by considering the totality of the circumstances, including the officer's subjective intent and the objective reasonableness of the officer's behavior. The trial court did not err in denying the motion to suppress evidence. Accordingly, we affirm Hoang's conviction for unlawful possession of cocaine.
COLEMAN, J., and APPLEWICK, J., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).