[Nos. 34776-4-I; 34959-7-I;  Division One.  March 11, 1996.]
35181-8-I.

THE STATE OF WASHINGTON, *Appellant*, v. LARRY
BRUCE EVANS, *Respondent*.

THE STATE OF WASHINGTON, *Appellant*, v. DWANE D.
McCLAY, *Respondent*.

THE STATE OF WASHINGTON, *Appellant*, v. ANDERSON
McCOY CALLENDRET, *Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *Michele A. Hauptman, Georgina D. Sierra,* and *Deborah A. Dwyer, Deputies,* for appellant.

*Eric J. Nielsen* and *Nielsen & Acosta,* for respondents Evans and McClay.

*Richard R. Tassano* of *Washington Appellate Project,* for respondent Callendret.

Cox, J. — Anderson Callendret, Dwane McClay, and Larry Evans each delivered cocaine to an undercover police officer in separate drug transactions. In each case, the trial court found that the defendant played a minor role in the drug transaction and sentenced him below the standard range. The State appeals those sentences. We consol-

idate these cases for review to consider whether the trial court erred.[1] We conclude that the trial court's finding that the defendant's role was minor was clearly erroneous in each case. Accordingly, we reverse the sentences and remand for sentencing within the standard range.

### State v. Callendret

Seattle Police Officer Antonio Terry was working undercover as a narcotics buyer when he encountered Anderson Callendret in a bus shelter on Madison Street. Terry said, "What's up?" to Callendret. Callendret replied, "What's up? Are you looking for soup?" Understanding the term "soup" to mean cocaine, Terry replied that he was interested. Callendret then asked Terry how much he wanted. Terry told him "fifty," meaning $50 worth of cocaine.

Callendret told Terry that cocaine was available at a nearby tavern and indicated that Callendret could get the drugs from someone inside. Callendret also asked Terry for a "plug," meaning part of the cocaine or cash in exchange for his help in setting up the deal. Callendret then entered the tavern while Terry waited outside.

Shortly thereafter, Callendret returned and told Terry that the "dude" would be out in a moment. Rodrick Bush then emerged from the tavern and approached Terry and Callendret. Callendret first spoke with Bush, and Bush then spoke with Terry. Terry told Bush he wanted a "fifty," and Bush gave Terry three rocks of cocaine. Terry handed Bush $50 in prerecorded police narcotics buy money. Callendret did not handle the cocaine or the money, but watched the transaction within arm's reach of Terry and Bush.

Terry then gave a "good buy" signal to alert observation officers that a narcotics transaction was complete. Bush went back into the tavern, and Callendret walked

[1] See RAP 3.3(b).

away with Terry. Arrest teams arrived on the scene and took both Bush and Callendret into custody. Callendret never received any of the cocaine or cash from Terry.

Arresting officers recovered from Bush the $50 in prerecorded buy money, about $900 in cash, a telephone pager, and rock cocaine. The officers also found a rock of suspected cocaine in Callendret's pocket. The rock later tested negative for cocaine. After his arrest, Callendret said to the officers, "Am I going for VUCSA? I just brought him to the guy. And I don't want to go back to the pen. I just got out." Callendret told them that he was "just a smoker, that he just got a piece to smoke."

The State charged Callendret with one count of delivery of cocaine in violation of the. Uniform Controlled Substances Act. A jury found him guilty as charged.

Callendret's standard sentencing range was 87-116 months. The trial court found that Callendret's participation in the crime was minor. It then imposed an exceptional sentence downward of 12 months' confinement and 24 months' community supervision, which includes one year of inpatient drug treatment.

### State v. McClay

Seattle Police Officer Jack Lone was working as an undercover narcotics officer posing as a buyer when Dwane McClay contacted him. McClay asked Lone what he needed, and Lone replied "forty." McClay then said, "O.K. My brother is down here tonight. Give me your money and I will get it." When Lone refused to give McClay any money, McClay displayed his identification in his wallet and told Lone to hold the wallet while he, McClay, retrieved the drugs. Lone then gave McClay $40 in prerecorded buy money and held McClay's wallet.

McClay flagged down a passing car and rode a short distance to a bus stop where he met an unknown man. After exchanging something with the man, McClay waved Lone over and the two walked together. McClay then spat

out several rocks of cocaine. Lone took two of the rocks and asked for one more, but McClay refused. Lone then gave the "good buy" signal and officers arrived on the scene. One of the arresting officers applied an "anti-swallow hold" on McClay and told him to spit out the drugs. McClay spit out one rock of cocaine.

McClay pleaded guilty to delivery of cocaine in violation of the Uniform Controlled Substances Act. McClay's standard sentencing range was 77-102 months. At sentencing, the trial court examined the certificate for determination of probable cause and other materials. It then determined that McClay had a minor role in the transaction. Based on this finding, the court imposed an exceptional sentence downward of 12 months' confinement and 24 months' community supervision, which includes a long-term inpatient drug treatment program.

## State v. Evans

Officer Dale Williams was working undercover and driving an unmarked car through Columbia City when he encountered Larry Evans. Williams pulled up to where Evans was standing, and Evans hopped into the car. Evans asked Williams what he was looking for, and Williams replied that he was looking for some rock cocaine. The two then drove off together.

They soon pulled up to a curb and stopped, where they met a young man and woman. Evans asked Williams for the money to buy the cocaine and said he was going to get out of the car. Williams refused to let Evans leave the car with his money. Evans then rolled down the passenger window, and the woman approached Evans' side of the car. She asked Evans what he wanted, and he told her. Evans then purchased one piece of rock cocaine from the woman. He passed the money to the woman, selected which of several rocks to take, broke off a small piece of the rock for himself, and gave Williams the rest of the cocaine. Officers arrested Evans shortly thereafter and found no drugs or money on him.

The State charged Evans with delivery of cocaine within 1,000 feet of a school. A jury found Evans guilty as charged. Evans' standard sentencing range was 45-51 months. Based on a finding that Evans had a minor role in the transaction, the court imposed an exceptional sentence of 12 months' confinement, 12 months of community supervision, a substance abuse evaluation, and compliance with recommended follow-up to the evaluation.

# I

## STANDARD OF REVIEW

A trial court may depart from the standard sentencing range and impose an exceptional sentence if it finds "that there are substantial and compelling reasons" to do so.[2] We may reverse an exceptional sentence only if (1) the reasons supplied by the sentencing judge are not supported by the record that was before that judge; (2) those reasons do not justify a sentence outside the standard range for that offense; or (3) the sentence imposed was clearly excessive or clearly too lenient.[3]

An ultimate finding that the defendant had "minor involvement" in a drug transaction may justify an exceptional sentence as a matter of law.[4] An ultimate finding establishes the existence or nonexistence of a determinative factual matter and is not simply a recitation of the evidence.[5] Our focus here is on whether the record supports the trial court's reasons for this ultimate finding. We apply the clearly erroneous standard in our review of

---

[2]RCW 9.94A.120(2).

[3]RCW 9.94A.210(4); *State v. Alexander*, 125 Wn.2d 717, 722-23, 729, 888 P.2d 1169 (1995).

[4]*Alexander*, 125 Wn.2d at 729; *State v. Gaines*, 122 Wn.2d 502, 512, 859 P.2d 36 (1993) (statutory mitigating factor of minor involvement may support an exceptional sentence in a drug case).

[5]*See State v. Alvarez*, 128 Wn.2d 1, 18, 904 P.2d 754 (1995).

the trial court's findings.[6] Findings are clearly erroneous "only if no substantial evidence supports [the trial court's] conclusion."[7]

# II

## MINOR INVOLVEMENT

■ A defendant's "lesser degree of participation" may be considered as a mitigating factor only if the defendant's participation is "significantly out of the ordinary for the crime in question."[8] In *State v. Moore*,[9] Division Two of this court affirmed an exceptional sentence downward based on the trial court's finding that the defendant's participation was "merely incidental to the overall criminal enterprise."[10] Moore was convicted of a total of 14 counts of various violations of the Uniform Controlled Substances Act and trafficking in stolen property. The charges were based on a series of drug and stolen property transactions arising out of a fairly sophisticated operation orchestrated by Moore's codefendant.

In affirming the trial court's findings supporting the exceptional sentence downward, the appellate court focused on Moore's involvement as compared to that of the codefendant.[11] Noting that Moore was not involved with the overall planning of the operation and assisted the codefendant only from " 'time to time,' " the appellate

---

[6]*State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991).

[7]*State v. Grewe*, 117 Wn.2d 211, 218, 813 P.2d 1238 (1991); *State v. Perez*, 69 Wn. App. 133, 137, 847 P.2d 532, *review denied*, 122 Wn.2d 1015 (1993).

[8]*State v. Nelson*, 108 Wn.2d 491, 501, 740 P.2d 835 (1987).

[9]73 Wn. App. 789, 871 P.2d 642 (1994).

[10]73 Wn. App. at 796.

[11]*See also Alexander*, 125 Wn.2d at 731 n.25 (noting that the focus of such an inquiry is on the defendant's role as compared to other parties who participated in the same crime).

°

court agreed with the trial court that his involvement was clearly not as great as that of the codefendant.[12]

While *Moore* addressed minor involvement as a mitigating factor in the context of multiple transaction drug trafficking, no Washington case has addressed a challenge to a factual finding of minor involvement in a single drug delivery. In *Alexander*, our state Supreme Court treated this finding as a verity because the State failed to provide the necessary record to properly contest the trial court's findings.[13] In *Gaines*, the State also failed to challenge this particular finding.[14] The court simply noted that minor involvement could justify the exceptional sentence, but remanded for the trial court to reconsider Gaines' role in the offense and to determine whether it alone justified the sentence.[15]

Here, the State has properly challenged the findings that the defendants had minor roles in these drug transactions. In each case, the State asserts that neither the trial court's stated findings of fact nor the record as a whole supports such findings. We agree.

## A

## Callendret

The trial court made several findings of fact to support its ultimate finding that Callendret was a minor participant in the delivery of cocaine to Officer Terry. The State assigns error to these findings. Callendret concedes in his brief that only two of the written findings arguably support the finding that he was a minor participant in the drug delivery.

---

[12]73 Wn. App. at 796.

[13]125 Wn.2d at 729 n.21.

[14]122 Wn.2d at 506-07 (trial court cited the defendant's minor role as a mitigating factor, but the State challenged only findings regarding drug addiction and the purposes of the SRA).

[15]122 Wn.2d at 512.

The trial court first found that "[w]hat the defendant hoped to gain was very minor in that he was attempting to get drugs for his personal use as opposed to making money."[16] At oral argument for this appeal, Callendret further conceded that this was the only finding that supported the trial court's determination of "minor participation."

■ The finding as to Callendret's motive is arguably supported by the record. But it does not support the ultimate finding that Callendret was a minor participant in the drug delivery. The fact that he facilitated the delivery only because he was hoping to get drugs for himself did not diminish the degree of his involvement or make him less culpable for the crime. His motive is irrelevant. The crime of delivery simply requires the knowing, physical transfer of a controlled substance.[17]

Callendret argues that motive should be considered as a mitigating circumstance for an exceptional sentence downward. For support, he cites *State v. Johnson*.[18] There, the trial court relied on "gang motivation" as an *aggravating* factor justifying an upward departure. Johnson was a gang member convicted of first and second degree assault for shooting rival gang members as they drove by an elementary school. The focus of the trial court's findings was the immediate impact of the crime on the community. The record contained evidence that students and their parents actually witnessed the shooting. Students were afraid to attend school, and parents likewise feared for their children's safety.[19]

Callendret's reliance on *Johnson* is misplaced for at

---

[16]Finding of fact 4.

[17]Guilt of the crime of delivery of a controlled substance is established by proof that the defendant delivered a controlled substance and that the defendant knew that the substance delivered was a controlled substance. RCW 69.50.401(a); WPIC 50.06. *Compare* RCW 69.50.410 (prohibiting the sale of controlled substances for profit).

[18]124 Wn.2d 57, 873 P.2d 514 (1994).

[19]124 Wn.2d at 73-76.

least two reasons. First, that court's reliance on the defendant's gang motivation was directly related to its finding regarding impact on the community. The record supported the court's finding that the crime had an immediate impact on the community. Here, the trial court made no findings regarding the impact of Callendret's motive on the community. Moreover, the record contains no evidence indicating that this "motive" had any community impact.

■ Second, " '[t]he lack of an aggravating circumstance does not create a mitigating circumstance'."[20] Thus, Callendret's lack of motive to profit financially from the transaction does not constitute a mitigating factor. Indeed, lack of a "bad" motive has been held to be an improper mitigating circumstance in support of an exceptional sentence. In *State v. Hodges*,[21] the trial court imposed an exceptional sentence downward based on a finding that the defendant committed the crime (delivery of cocaine) in order to "put food on the table." This court reversed the sentence, reasoning that

> public policy considerations dictate that a defendant's decision to rely on unlawful means to generate income simply cannot function as a permissible crime-related mitigating factor.[22]

The court then concluded that

> the fact that Hodges was living on public assistance and perceived selling drugs as a way to put more food on the table is not, as a matter of law, a substantial and compelling reason justifying the imposition of an exceptional sentence.[23]

■ Likewise, the fact that Callendret simply wished to support his personal drug habit cannot constitute a

[20]*Alexander*, 125 Wn.2d at 724 (quoting *State v. Alexander*, 70 Wn. App. 608, 613, 854 P.2d 1105 (1993)).

[21]70 Wn. App. 621, 624, 855 P.2d 291 (1993), *review denied*, 124 Wn.2d 1013 (1994).

[22]70 Wn. App. at 624.

[23]70 Wn. App. at 624.

mitigating circumstance in support of an exceptional sentence downward. Nor can we say that Callendret's motive for delivering the cocaine was purely benign or somehow reduced his culpability.

Callendret correctly concedes error on the remaining findings of fact that the State challenges. For example, the trial court found that the offense committed by Callendret was "not a typical drug transaction."[24] There is no support in the record for this finding. At trial, an experienced narcotics officer described the components of a typical drug transaction:

> A typical drug transaction would involve one person, that person being the buyer, and then a seller or a facilitator and also a currency holder, depending on the size of the operation.
>
> . . . .
>
> A facilitator is a person who actively goes out and seeks customers for the person who is selling.

Another officer testified:

> You will have what we call facilitators and runners who work for the person who holds the dope. And they will make contact with the customer. They will go to the person who has the drugs to set up the deal. And they will bring that person to the customer or get the drugs from the person who is holding the drugs to deliver to the customer.

He described a facilitator as "someone who makes contact with someone on the street and lines up a drug deal," and testified that these types of drug transactions were "quite frequent" and "very common." Another officer testified that it was common for facilitators to ask for a "plug" for their services.

The record clearly shows that Callendret was the facilitator for this drug transaction: he made contact with Officer Terry on the street and set up the drug deal. Cal-

---

[24]Finding of fact 7.

lendret asked Terry if he wanted drugs, requested a "plug" for his help, and went directly to the tavern to procure the seller.

Callendret cites no evidence in the record (and our review reveals none) to refute the officers' testimony that this was a typical buyer/facilitator/seller drug transaction. To the contrary, all of the testimony at trial regarding the nature of this transaction in particular, and drug transactions in general, indicated that this transaction had all the earmarks of a common drug transaction. There is no substantial evidence for the court's finding that this was not a typical drug transaction. Indeed, such a finding is contrary to the clear weight of the evidence. The finding is therefore clearly erroneous.

The trial court also found that [t]his offense was not a planned drug deal."[25] This finding is arguably supported by the record. But it does not support the ultimate finding that Callendret was a minor participant. To the contrary, if the drug deal was not planned, Callendret's role in the transaction would be enhanced, not diminished. If Callendret, as he suggests, was not working in concert with the codefendant, then he was actively soliciting customers on his own initiative. Thus, because the crime originated with Callendret, his involvement was critical to its occurrence. His involvement therefore cannot be fairly characterized as "minor."

The trial court further found that there was some dispute as to whether Callendret "sought out after" Terry by the way Callendret greeted him.[26] But there was no dispute that Callendret brought up the subject of drugs first. Thus, the fact that Callendret may not have sought out Terry first did not diminish his role.

One remaining finding characterizes Callendret's meet-

[25]Finding of fact 7.

[26]Finding of fact 8.

ing Terry as "happenstance."[27] Another finding states that "a difference in time" may have resulted in no encounter with Terry and therefore no involvement by Callendret.[28] Even if these findings are supported by the record, they do not support a finding of minor involvement. The fact that the encounter between Terry and Callendret might not have occurred does not change the extent of Callendret's involvement as the facilitator in the crime that did occur.

Finally, Callendret notes that he never touched the drugs or money and that the officers found no drugs or money on him. This evidence alone does not demonstrate minor involvement. He solicited the buyer, contacted the seller, set up the deal, and expected compensation for setting up the deal.

Callendret's participation was 'not "significantly out of the ordinary" for the crime of delivery. But for Callendret's participation, his codefendant supplier and the buyer, Officer Terry, would have never connected and the crime of delivery would have never occurred. He was the facilitator and at least as involved as the supplier.

The trial court's finding that Callendret was a minor participant is unsupported by substantial evidence in the record. It is therefore clearly erroneous. Because that finding was the sole basis for the exceptional sentence downward, we reverse and remand for sentencing within the standard range.

## B
## McClay

The State challenges each of the trial court's findings supporting the ultimate finding that McClay's role in the transaction with Officer Lone was minor. We agree that these findings are clearly erroneous.

The trial court found that McClay was "a middle person

---

[27]Finding of fact 5.

[28]Finding of fact 6.

and nothing more." The court noted that "no other indicia of dealing was present," and that no buy money or other drugs were found on McClay.[29] The court also emphasized the fact that McClay's "entire gain" from the transaction was a rock for personal use.[30] Based on these facts, the trial court found that "[t]he defendant's role in this transaction was minor," and imposed an exceptional sentence downward.[31]

McClay's role in the delivery cannot be fairly characterized as "minor." McClay's role in this offense was at least equal to that of the "unknown man." McClay made contact with the officer, asked him what he wanted, took the buy money from the officer, made an "exchange" with an "unknown man," and delivered the cocaine to the officer. Thus, McClay's role was that of a principal player.

By characterizing McClay as a "middle man," the trial court suggests McClay either was nothing but a mere conduit for the delivery of drugs or played only a small role in a larger scheme of drug dealing. Indeed the court's findings state that there was "[n]o other indicia of dealing."[32] But the focus of the proper inquiry is on the extent of the defendant's involvement in the crime charged.[33]

The crime for which McClay was convicted was *delivery* of a controlled substance. The record shows that he was more than minimally involved in the offense: he actually delivered the cocaine to the officer.

Moreover, the trial court's findings of fact relating to McClay's motive for participating in the transaction do not support its ultimate finding that he had a minor role. As in Callendret's case, the extent of McClay's involvement is not diminished simply because he may have hoped

[29]Finding of fact 1.

[30]Finding of fact 5.

[31]Finding of fact 10.

[32]Finding of fact 1.

[33]*Nelson*, 108 Wn.2d at 501 ("the defendant's participation must be significantly out of the ordinary for *the crime in question*") (italics ours).

to gain very little from participating in the transaction. What he received for his involvement did not affect the degree of his involvement: he delivered the cocaine nonetheless. His motive does not make him less culpable. The fact that he resorted to unlawful means to support his drug habit cannot serve as a valid mitigating factor.[34]

The trial court's remaining findings that no buy money was found on McClay and that his action of leaving the wallet with the officer suggest a low degree of sophistication likewise do not demonstrate minor involvement. While supported by the record, such findings do not negate the facts outlined in the certification of probable cause. McClay solicited the buyer, took the buy money, and actually delivered the cocaine. Such facts indicate direct involvement in the crime of delivery of cocaine.

The trial court's finding that McClay was a minor participant is unsupported by substantial evidence in the record and is therefore clearly erroneous. We reverse this sentence and remand for sentencing within the standard range.

## C
### Evans

The trial court's conclusion of law 2 states its reason for the exceptional sentence as follows:

> because Evans['] involvement in the drug transaction was minor. He assisted Officer Williams [in finding] two individuals who were selling drugs. The transaction was then principally conducted between the officer and sellers.

The State correctly notes in its brief that this statement is a finding of fact. We review this finding under the clearly erroneous standard.[35] We consider the State's challenge to

---

[34]*See Hodges*, 70 Wn. App. at 624.

[35]*Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986) (findings of fact erroneously labeled as conclusions of law are reviewed as findings of fact).

this finding together with its challenges to related findings.

The State first argues that the trial court's finding that Officer Williams approached Evans is not supported by the record. Williams testified at trial that Evans gestured to him as he drove by in the unmarked car. Williams then drove around the block and returned to where Evans was standing. Evans then approached and entered the car. Evans asserts that Williams also testified that "Evans put his hand to his forehead area" and that Williams " 'took the gesture as meaning am I (Williams) looking' because of the gesture and the area."[36] At trial, Evans denied ever meeting Williams before seeing him in court. The trial court was entitled to make the finding it did on the basis of this conflicting evidence. The finding is supported by the record and is not clearly erroneous.

The State next challenges findings 2, 4, and 5, which describe the nature of Evans' involvement in the drug transaction. Finding 2 states:

> Evans hopped into the officer's car. The two then drove and came upon two individuals on the sidewalk who were selling drugs.

Finding 4 states:

> Evans['] involvement in the drug transaction was limited to passing the cocaine and money between the officer and two drug sellers.

Finding 5 states:

> The principal players in the transaction were the purchaser ([O]fficer Williams) and the sellers (the two individuals standing on the sidewalk). Evans['] role was minor.

The State challenges finding 2, not on the basis that the record fails to support the statement, but on the basis that it is incomplete. The State points out that there was evi-

---

[36]Br. of Resp't at 6.

dence that Evans directed Williams to the location where the drug transaction occurred. It may have been appropriate for the trial court to recharacterize the event in the way the State suggests. But there is support in the record for the court's finding, as stated. It is therefore not clearly erroneous.

The State next challenges findings 4 and 5 as not being supported by the evidence in the record. The State points to evidence in the record that after Evans entered Williams' car, the two drove to the location of the transaction some distance away. The State further argues that Evans must have known in advance that the man and woman who sold the drugs would be there because they were not visible from the street. Finally, the State points out that Evans negotiated the entire transaction with the female seller, insisted on selecting the rock to be purchased, took payment by breaking off a piece of the cocaine for himself, and passed the remaining drugs to Officer Williams.

We agree that findings 4 and 5 are not supported by the record. Finding 4 is not supported by the record because Evans' role in the transaction was not limited to passing drugs and money between Officer Williams and the drug sellers. He rode with Williams to the site of the drug sale after Williams made it clear he was looking for rock cocaine. Evans then conducted all discussions with the drug sellers, selected which rock of cocaine to take from the sellers, broke off a piece of cocaine for himself, and passed the rest to Williams. These activities demonstrate much more than just passing drugs between purchaser and seller. Finding 4 is clearly erroneous.

For the same reasons, finding 5 is also clearly erroneous. The finding implies Evans was not a principal in the transaction. The evidence clearly shows he was by virtue of his role in the transaction.

The finding of fact labeled conclusion of law 2 rests on the same faulty footing as findings 4 and 5. The evidence does not support the finding that "Evans['] involvement in the drug transaction was minor." Moreover, the evidence

does not support the finding that "[t]he transaction was then principally conducted between the officer and sellers." This finding has no support in the record and is also clearly erroneous.

Evans' actions here were not significantly out of the ordinary for delivery of cocaine and therefore cannot support a finding of minor involvement.[37] Experienced narcotics officers testified at trial that use of a go-between such as Evans was one of three ways that a buy-bust operation normally occurs. In his four years of experience in undercover narcotics transactions, Officer Williams estimated that one-third of them involved the use of a go-between.

Like the Callendret and McClay cases, the evidence here indicates that Evans' role was as significant as that of the sellers. Evans helped find the sellers, negotiated the transaction, exchanged the buy money for the cocaine, and delivered the cocaine to Williams. He also took a piece of the cocaine as payment for his services. But for Evans' participation, buyer and seller would not have connected and the crime of delivery would have never occurred. The trial court's finding that he was a minor participant is clearly erroneous.

We reverse the sentence in this case and remand for sentencing within the standard range

## III

### CONCLUSION

The State also challenges all three exceptional sentences on the basis that the lengths of the sentences were clearly too lenient. Additionally, the State challenges the sentences on the basis that the trial court improperly considered the purposes of the SRA (in Evans' and Callendret's cases) and the defendants' drug addiction (in Callendret's and McClay's cases).

---

[37]See Nelson, 108 Wn.2d at 501.

The State mischaracterizes the trial court's reference to these factors in its findings. While these factors alone are insufficient to justify an exceptional sentence, the trial court may consider the purposes of the SRA and a defendant's drug addiction in fashioning the length and terms of the exceptional sentence once the court identifies a valid mitigating factor to support the sentence itself.[38] In each of these cases, the trial court expressly indicated that the basis for the exceptional sentence was the minor participant finding. Thus, the court's consideration of these other factors was limited to its determination of the length and terms of the sentence.

We decline to address the issues concerning the length and terms of sentences because we hold that the finding of "minor involvement" in each of these cases is clearly erroneous. It is therefore unnecessary for us to reach those issues.

We reverse each of the exceptional sentences and remand for sentencing within the respective standard ranges.

BAKER, C.J., and GROSSE, J., concur.

Review denied at 129 Wn.2d 1032 (1996).

---

[38]*Gaines*, 122 Wn.2d at 511-13.