[No. 17499-9-III. Division Three. September 16, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. ARMANDO MAYORGA DESANTIAGO, *Appellant*.

*Antonio Salazar* of *Salazar Law Offices*, for appellant.

448

*Steve M. Lowe, Prosecuting Attorney*, and *James F. Bell, Deputy*, for respondent.

SWEENEY, A.C.J. — In *State v. Ladson*[1] our Supreme Court held that a police officer's subjective motive for a traffic stop, in addition to the reasonableness of the officer's behavior, determines the constitutional propriety of the stop. Here, a Pasco police officer suspected that Armando DeSantiago had just bought or sold drugs. But the officer did not have probable cause to stop him for the drug transaction. So he followed Mr. DeSantiago looking for a reason to stop him. After following him for about 10 blocks, the officer stopped Mr. DeSantiago for a traffic violation. Mr. DeSantiago had an outstanding warrant and was driving without a license or insurance. The officer arrested him and searched his car where he found drugs and a gun. The dispositive question here is whether the pretextual nature of the stop taints the arrest and subsequent search. Based on *Ladson*, we conclude that it does and reverse.

## FACTS

Pasco Police Officer Jason Miller, a patrol officer, saw an automobile pull up to a small apartment complex. The apartment complex is a narcotics hot spot. Officer Miller was watching the complex. The driver entered an apartment, returned two to five minutes later and drove away.

Officer Miller followed the car for several blocks because he suspected the driver had bought drugs and he wanted to

---

[1]138 Wn.2d 343, 979 P.2d 833 (1999).

stop the car. Mr. DeSantiago made a left-hand turn and then immediately moved into the outside or right-hand lane. Officer Miller did not see a turn signal, stopped the car, and asked Mr. DeSantiago for his driver's license, vehicle registration, and proof of insurance. Mr. DeSantiago did not have a driver's license or insurance. He produced his Washington identification card. Officer Miller's background check showed that Mr. DeSantiago had a suspended license and an outstanding misdemeanor warrant.

Officer Miller cited Mr. DeSantiago for making an improper left turn and arrested him for driving with a suspended license and for the outstanding warrant. He searched Mr. DeSantiago and the vehicle, incident to arrest, and found a small bindle of methamphetamine and a handgun.

Mr. DeSantiago was charged with unlawful possession of a controlled substance, methamphetamine, and second degree unlawful possession of a firearm. Mr. DeSantiago moved to suppress the methamphetamine and gun. He argued that the stop was pretextual and RCW 46.61.290(2), the left-hand turn statute, is ambiguous. The court denied his motion.

The court found Mr. DeSantiago guilty as charged.

## DISCUSSION

1. Is the left turn statute, RCW 46.61.290(2), ambiguous?

■■ Statutory interpretation is a question of law and our review is therefore de novo. *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 245, 955 P.2d 798 (1998). But there is no need for us to construe a statute if it is unambiguous. *State v. Weed*, 91 Wn. App. 810, 812, 959 P.2d 1182 (1998), *review denied*, 137 Wn.2d 1010 (1999). If the statute is unambiguous, we derive the statute's meaning from its language alone. *State v. Hahn*, 83 Wn. App. 825, 831-32, 924 P.2d 392 (1996), *review denied*, 131 Wn.2d 1020 (1997).

■ A statute is ambiguous only if it is susceptible to two

or more reasonable interpretations. *Weed*, 91 Wn. App. at 812. It is not ambiguous merely because different interpretations are conceivable. *Hahn*, 83 Wn. App. at 831.

■ RCW 46.61.290(2) (left turns) requires:

The driver of a vehicle intending to turn left shall approach the turn in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of the vehicle. Whenever practicable the left turn shall be made to the left of the center of the intersection and so as to leave the intersection or other location in the extreme left-hand lane lawfully available to traffic moving in the same direction as the vehicle on the roadway being entered.

RCW 46.61.290(2) is not a model of clarity. But it is not ambiguous.

First, a driver intending to turn left must approach the turn from the left lane closest to the center dividing line being exited from that is lawfully available. Second, whenever practicable the driver must make the turn to the left of the center of the intersection on the roadway being entered. This means the driver shall not cross over centerlines of the intersecting streets until executing the turn. *See Foster v. Bylund*, 7 Wn. App. 745, 748, 503 P.2d 1087 (1972). Finally, and of importance here, whenever practicable the driver shall exit the intersection and enter the roadway the driver is turning onto in the left lane closest to the center dividing line that is lawfully available. RCW 46.61.290(2).

Mr. DeSantiago should have turned into the left-hand lane of Court Street. So by this statute he had to leave 5th Street from the extreme left-hand lane, not cross over the centerlines of the 5th Street and Court Street intersection until executing the turn, and then turn into the extreme left-hand lane of Court Street.

The court found that Mr. DeSantiago did not turn onto the extreme left-hand lane of Court Street. Mr. DeSantiago does not assign error to this finding.

Mr. DeSantiago's testimony supports this interpretation

of RCW 46.61.290(2) as well. He knew, and the trial court found, that he was "aware . . . he was required to turn into the left hand lane[.]" And he did not. Officer Miller then properly stopped him for the infraction.

2. Does Officer Miller's subjective motive for stopping Mr. DeSantiago invalidate an otherwise objectively valid traffic stop?

██ ██ We evaluate the constitutional validity of this stop by the requirements of article I, section 7, of our state constitution, not the Fourth Amendment to the United States Constitution. *State v. Ladson*, 138 Wn.2d 343, 979 P.2d 833 (1999). In *Ladson*, the court held

> article I, section 7, of the state constitution has broader application than does the Fourth Amendment of the United States Constitution. In *City of Seattle v. Mesiani*, 110 Wn.2d 454, [457], 755 P.2d 775 (1988), article I, section 7, was interpreted independently of the Fourth Amendment in the context of the same legal issue which is present in this case, namely warrantless stops of automobiles for the purpose of investigation.

*Id.* at 348 (citations omitted). A pretextual traffic stop violates article I, section 7, because it is a warrantless seizure. *Id.* at 358.

The *Ladson* court noted a fundamental difference between the detention of a citizen for the purpose of discovering evidence of crimes and a community caretaking stop aimed at enforcing the traffic code. *Id.* at 358 n.10. The essence of a pretextual traffic stop is that the police stop a citizen, not to enforce the traffic code, but to investigate suspicions unrelated to driving. *Id.* at 351. Here, as in *Ladson*, "[t]he question [is] whether the fact that someone has committed a traffic offense, such as failing to signal or eating while driving, justifies a warrantless seizure which would not otherwise be permitted absent that 'authority of law' represented by a warrant." *Id.* at 352. *Ladson* clearly answers that question: "Article I, section 7, forbids use of pretext as a justification for a warrantless search or seizure

because our constitution requires we look beyond the formal justification for the stop to the actual one." *Id.* at 353.

■ "When determining whether a given stop is pretextual, the court should consider the totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior." *Id.* at 358-59 (disapproving the purely objective inquiry in *State v. Chapin*, 75 Wn. App. 460, 464, 879 P.2d 300 (1994), *review denied*, 125 Wn.2d 1024 (1995)).

The court found that:

♦ Officer Miller saw Mr. DeSantiago exit an apartment complex that was a narcotics hot spot. Mr. DeSantiago drove away in an automobile. Findings of Fact 1-3.

♦ Officer Miller followed Mr. DeSantiago because he "wanted to identify [his] license plate and was looking for a basis to stop the vehicle." Findings of Fact 4-5.

♦ After following him for several blocks, Officer Miller saw Mr. DeSantiago make an improper left-hand turn from Fifth Street onto Court Street. Findings of Fact 4, 6.

♦ Officer Miller pulled Mr. DeSantiago over for an improper left-hand turn. Finding of Fact 8.

♦ Mr. DeSantiago testified that he made a proper left-hand turn. He then immediately turned into the right-hand lane after signaling to do so. Finding of Fact 7.

This was a pretextual stop. And the evidence from this search must then be suppressed. *Ladson*, 138 Wn.2d at 359.

The State tries to distinguish *Ladson*. It notes that in *Ladson* the police were narcotics detectives who usually do not make routine traffic stops, while here Officer Miller was a patrol officer. This is a distinction, but not a material one. Officer Miller was not on routine traffic patrol here. He was watching a "narcotics hot spot" and saw what he came to see—someone apparently buy drugs. He then followed up on that suspicion. Officer Miller was clearly "look-

ing for a basis to stop the vehicle" and subjectively intended to engage in a pretextual stop. Finding of Fact 5; *Ladson*, 138 Wn.2d at 358-59. So regardless of the title, patrol officer or narcotics detective, both were doing the same work—narcotics investigation.

The evidence seized following this traffic stop— methamphetamine and pistol—should have been suppressed.

The convictions are reversed and the prosecution dismissed.

BROWN and KATO, JJ., concur.