182 P.3d 999 (2008)
STATE of Washington, Respondent,
v.
Jesus M. MONTES-MALINDAS, Appellant.
No. 25280-9-III.
Court of Appeals of Washington, Division 3.
April 29, 2008.
*1000 Susan Marie Gasch, Gasch Law Office, Spokane, WA, for Appellant.
James Andrew Hershey, Attorney at Law, Wenatchee, WA, for Respondent.
SCHULTHEIS, C.J.
¶ 1 An unlawful pretext stop occurs when an officer stops a vehicle in order to conduct a speculative criminal investigation unrelated to the driving, and not for the purpose of enforcing the traffic code. State v. Ladson, 138 Wash.2d 343, 349, 351, 979 P.2d 833 (1999). Here, after viewing the suspicious behavior of occupants of a van in a parking lot, an officer decided to surveil the parties. The van left the parking lot without its headlights on. The officer followed. After the headlights were turned on a short time later, the officer pulled the van over. We conclude *1001 that this constitutes a pretext stop. Accordingly, we reverse.

FACTS
¶ 2 On October 25, 2005, Sergeant Kevin Dresker of the Wenatchee Police Department was in a Walgreen's parking lot speaking with a gentleman whose daughter had run away. During this conversation, Sergeant Dresker saw Jesus Montes-Malindas and two other people in a van, acting nervously. One of the men in the van got out and into another occupied car, and left the area. Mr. Montes-Malindas then switched places with the occupant in the driver's seat.
¶ 3 After concluding talking with the father of the runaway, Sergeant Dresker decided to watch the van occupants. He drove to a car dealership across the street from Walgreen's and parked so that he could not be seen by the van occupants. He saw the occupants of the van go into Walgreen's and leave the store a few minutes later with a female. The parties returned to the van and drove south on Miller Street, passing the car dealership where Sergeant Dresker was parked.
¶ 4 When the van pulled out of the parking lot onto Miller Street, Sergeant Dresker noticed that the headlights of the van were not illuminated, although it was dark. As the van passed, Sergeant Dresker pulled out and got behind the van. The driver then turned the headlights on. The van had driven about 100 yards without its lights illuminated.
¶ 5 Sergeant Dresker then radioed in that he was going to stop the van, and turned his overhead lights on to initiate the stop. Mr. Montes-Malindas turned the next corner and stopped.
¶ 6 Sergeant Dresker decided to approach the van from the passenger side for safety reasons. He later explained that, in addition to protection from traffic, the occupants would not expect such an approach and he could better see into the passenger area. Sergeant Dresker noted that the male rear seat passenger was not wearing a seatbelt. The female front seat passenger told him the van was hers and she had no insurance. Both passengers provided identification to the officer.
¶ 7 As another officer arrived, Sergeant Dresker moved to the driver's side. Mr. Montes-Malindas told Sergeant Dresker that he did not have a driver's license and that he did not have any identification. Because of his lack of license and identification, combined with the suspicious activity he saw in the parking lot, the officer decided to be cautious. He therefore refused to allow a passenger to get out of the van. Mr. Montes-Malindas initially gave Sergeant Dresker a false name. Sergeant Dresker arrested Mr. Montes-Malindas for having no valid operator's license.
¶ 8 The female passenger was removed from the van and checked for weapons. There were none. The male passenger became nervous and started shaking during his pat-down. The officer found some narcotics paraphernalia on his person, and arrested him for possession.
¶ 9 A firearm was found in the vehicle during a search of the van incident to arrest. In his patrol car the officer found a residue-filled baggie that contained crystal methamphetamine, which Mr. Montes-Malindas had in his hand when he was arrested. Mr. Montes-Malindas was charged, among other things, with possession of methamphetamine and first degree unlawful possession of a firearm.
¶ 10 Prior to trial, defense counsel filed a motion to suppress, contending that the stop was pretextual and therefore illegal. The trial court denied the suppression motion.
¶ 11 Mr. Montes-Malindas was found guilty of unlawful possession of a firearm in the first degree and possession of methamphetamine after a bench trial on stipulated facts. This appeal followed.

DISCUSSION
¶ 12 An appellate court reviews findings of fact related to a motion to suppress under the substantial evidence standard. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999). Substantial evidence is "evidence sufficient to persuade a fair-minded, rational person of the truth of the finding." Id. Review of conclusions of *1002 law pertaining to suppression of evidence is de novo. Id.
¶ 13 With a few exceptions, warrantless searches and seizures are per se unreasonable and violate article I, section 7 of the Washington Constitution. State v. Hendrickson, 129 Wash.2d 61, 70-71, 917 P.2d 563 (1996). One such exception is a search incident to the arrest of a person in possession of a vehicle, which permits an officer to "search the passenger compartment of a vehicle for weapons or destructible evidence." State v. Stroud, 106 Wash.2d 144, 152, 720 P.2d 436 (1986). But "arrest may not be used as a pretext to search for evidence." State v. Michaels, 60 Wash.2d 638, 644, 374 P.2d 989 (1962).
¶ 14 Accordingly, "a traffic infraction may not be used as a pretext to stop to investigate for a sufficient reason to search even further." Ladson, 138 Wash.2d at 353, 979 P.2d 833. If a pretextual stop occurs, the Washington Constitution requires that "all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." Id. at 359, 979 P.2d 833.
¶ 15 This court has noted the "fundamental difference between the detention of a citizen for the purpose of discovering evidence of crimes and a community caretaking stop aimed at enforcing the traffic code." State v. DeSantiago, 97 Wash.App. 446, 451, 983 P.2d 1173 (1999) (citing Ladson, 138 Wash.2d at 358 n. 10, 979 P.2d 833). Under Ladson, the inquiry is "whether the fact that someone has committed a traffic offense, such as failing to signal or eating while driving, justifies a warrantless seizure which would not otherwise be permitted absent that `authority of law' represented by a warrant." Ladson, 138 Wash.2d at 352, 979 P.2d 833 (footnotes omitted).
¶ 16 To determine whether a traffic stop is a pretext for accomplishing a search, "the court should consider the totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior." Id. at 359, 979 P.2d 833. To satisfy an exception to the warrant requirement, the State must show that the officer, both subjectively and objectively, is actually motivated by a perceived need to make a community caretaking stop aimed at enforcing the traffic code. Id.
¶ 17 The State argues that, because the trial court found that Sergeant Dresker was credible in his testimony that he did not follow the van hoping to find a legal reason to stop it and his subjective intent was to stop the van and cite the driver for not having his headlights on, Sergeant Dresker's testimony about his own subjective intent is dispositive.[1] We disagree.
¶ 18 In Ladson, the Washington Supreme Court rejected the purely objective test for pretext stops because "an objective test may not fully answer the critical inquiry: Was the officer conducting a pretextual traffic stop or not?" Ladson, 138 Wash.2d at 359, 979 P.2d 833 (overruling State v. Chapin, 75 Wash. App. 460, 464, 879 P.2d 300 (1994) (objective test)). The court therefore added a subjective component to the test: "When determining whether a given stop is pretextual, the court should consider the totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior." Id. at 358-59, 979 P.2d 833.
¶ 19 But by enhancing the test with a subjective feature, the court did not eliminate the objective considerations. Instead, the test announced in Ladson made it easier for courts to find that a stop was pretextual based on the totality of the circumstances rather than only the objective circumstances, regardless of an admission of any pretextual subjective reasons for the stop. The Ladson court recognized that an officer's candid admission to pretextual conduct is more probative than the denial of the conduct. Ladson, 138 Wash.2d at 359, 979 P.2d 833; see, e.g., *1003 DeSantiago, 97 Wash.App. at 452-53, 983 P.2d 1173 (reversing conviction when, despite the trial court's finding that the officer "`wanted to identify [Mr. DeSantiago's] license plate and was looking for a basis to stop the vehicle,'" it denied the suppression motion); State v. Myers, 117 Wash.App. 93, 94-95, 69 P.3d 367 (2003) (reversing conviction where officer admitted that he pulled a driver over to check if the driver's license was suspended, rather than to cite the driver for making two lane changes while signaling simultaneously). Thus, "[i]t is not enough for the State to show that there was a traffic violation. The question is whether the traffic violation was the real reason for the stop." State v. Meckelson, 133 Wash.App. 431, 437, 135 P.3d 991 (2006) (citing Ladson, 138 Wash.2d at 358-59, 979 P.2d 833), review denied, 159 Wash.2d 1013, 154 P.3d 919 (2007).
¶ 20 Here, besides stating that the stop was made only because of the delayed engagement of the headlights, Sergeant Dresker also stated that he was suspicious of the activity that he saw in the parking lot, and that those suspicions probably were on his mind when he decided to pull over the van and approach on the passenger side, rather than the driver side. And he spoke to the passengers first, rather than to the driver, suggesting that the stop was premised on more than the driver's actions.
¶ 21 These facts suggest that Sergeant Dresker was not on routine patrol; he was conducting surveillance on the van. DeSantiago, 97 Wash.App. at 452-53, 983 P.2d 1173 (that the officer was assigned to routine patrol was not material when the officer was actually surveilling a narcotics hot spot); see also Myers, 117 Wash.App. at 97, 69 P.3d 367 (whether an officer was on routine patrol is not dispositive).
¶ 22 Sergeant Dresker testified that he stops the majority of the drivers he sees driving without their headlights on, unless he is responding to a call, but he sometimes will just signal them to turn on their lights. As noted by this court in Myers, our response is "so what?" Id. What is significant is what Sergeant Dresker did in this case. Id. And it is not reasonable to stop a car only after its lights have been turned on. He also did not issue a citation for any headlight violation. Although failure to issue a citation for the underlying infraction is one of the factors to be considered when assessing objective reasonableness, it is not dispositive. State v. Hoang, 101 Wash.App. 732, 742, 6 P.3d 602 (2000) (police are not required "to issue every conceivable citation as a hedge against an eventual challenge to the constitutionality of a traffic stop allegedly based on pretext").
¶ 23 No evidence was presented to indicate the presence of other traffic on the roadway or the existence of endangerment to pedestrians or property resulting from Mr. Montes-Malindas's brief roadway travel without his headlights on. He pulled onto the street in front of a business and traveled about 100 yards, apparently without interfering with any other vehicular or pedestrian traffic, before turning his headlights on.
¶ 24 Backup arrived as the officer was speaking to Mr. Montes-Malindas. Obviously, the additional officer arrived in response to the radio call. This suggests, as does his decision to proceed with caution, that Sergeant Dresker was preparing for something more than a traffic stop.
¶ 25 Based on the totality of the circumstances, we conclude that this was an unlawful pretext stop.
¶ 26 "When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." Ladson, 138 Wash.2d at 359, 979 P.2d 833. Suppression is constitutionally required under article I, section 7. Id. The traffic stop in this case was without authority of law because the investigatory reason for the stop was not exempt from the warrant requirement. The court erred by denying the suppression motion.
¶ 27 We reverse the conviction. Accordingly, we need not address the other issues raised by Mr. Montes-Malindas, including the validity of his arrest, the legitimacy of the search of the passenger, and the validity of the search of the van.
WE CONCUR: KULIK, J., and STEPHENS, J. Pro Tem.
NOTES
[1] We note that the trial court made some conclusions of law that it referred to as "findings." Clerk's Papers at 26 (Findings of Fact 12-14). Mr. Montes-Malindas challenged these "findings," including those concerning subjective intent, that the stop was objectively reasonable, and that there was no pretext. These are conclusions of law. State v. Myers, 117 Wash.App. 93, 96, 69 P.3d 367 (2003). We review them as such. Id.