[No. 29164-2-III.   Division Three.   September 15, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. GILBERTO CHACON ARREOLA, *Appellant*.

*Susan M. Gasch* (of *Gasch Law Office*), for appellant.

*D. Angus Lee, Prosecuting Attorney*, and *Ryan S. Valaas, Deputy*, for respondent.

¶1 SIDDOWAY, J. — Pretextual traffic stops are prohibited by the Washington Constitution. CONST. art. I, § 7; *State v. Ladson*, 138 Wn.2d 343, 353, 979 P.2d 833 (1999). In this case, a patrol officer followed Gilbert Chacon Arreola's blue Chevy Cavalier for over a half mile because it fit the description of a car reportedly driven by a suspected drunk driver. While watching for signs of impaired driving, the officer noticed the car was equipped with a modified muffler in violation of state vehicle equipment requirements. Without having seen any evidence of impaired driving, the officer pulled over Mr. Chacon[1] with the primary motive of investigating whether he was driving under the influence of alcohol (DUI), in violation of RCW 46.61.502. At a hearing on Mr. Chacon's motion to suppress the State's evidence, the officer testified that the muffler was an additional reason for the stop and, hypothetically, would have caused him to stop and cite Mr. Chacon even absent suspicion of drunk driving.

---

[1] Mr. Chacon prefers to go by this surname, which was used in the trial court. Report of Proceedings (RP) (Apr. 14, 2010) at 6.

¶2 The principal issue on appeal is whether the trial court's finding of the officer's secondary, hypothetically sufficient reason for the stop supports its conclusion that the stop was nonpretextual and constitutional. We hold that it does not. The court's findings that the officer was following Mr. Chacon to investigate a possible DUI and stopped him principally for that reason compel the conclusion that the stop violated the Washington Constitution. We reverse Mr. Chacon's conviction and remand with directions to dismiss the charges with prejudice.

## FACTS AND PROCEDURAL BACKGROUND

¶3 Gilberto Chacon Arreola was found guilty of felony DUI. He also pleaded guilty to driving with a suspended license in the first degree. Prior to trial Mr. Chacon unsuccessfully sought to exclude the State's evidence, arguing that he had been subjected to a pretextual stop in violation of the Washington State Constitution.

¶4 Officer Anthony Valdivia of the Mattawa Police Department was the only witness to testify at the suppression hearing. He testified that while on routine patrol on the evening of the arrest he responded to a citizen report of a possible drunk driver on a state highway in the southwest section of Grant County. Upon arriving in the area of the reported sighting, he began following Mr. Chacon's car, which matched the description provided by the citizen report. He did not see any behavior suggesting that Mr. Chacon was under the influence of alcohol but could hear that the car was equipped with an after-market exhaust system, amplifying the noise of the engine in violation of RCW 46.37.390(3).[2] He followed the Chevy southbound for

---

[2] RCW 46.37.390(3) provides:

"No person shall modify the exhaust system of a motor vehicle in a manner which will amplify or increase the noise emitted by the engine of such vehicle above that emitted by the muffler originally installed on the vehicle, and it shall be unlawful for any person to operate a motor vehicle not equipped as required by this subsection, or which has been amplified as prohibited by this subsection. A

roughly a half mile, at which point Mr. Chacon made a legal left turn. After following Mr. Chacon eastbound for a short distance, Officer Valdivia activated his overhead lights. Mr. Chacon did not immediately pull over, but before long made a left turn into a yard and stopped. Upon approaching the car, Officer Valdivia recognized Mr. Chacon from prior encounters, noticed that his eyes were bloodshot and watery, saw open containers of beer in the car, and smelled alcohol. He arrested Mr. Chacon on several outstanding warrants after issuing citations for the modified muffler, DUI, and driving with a suspended license.

¶5 At the suppression hearing, Officer Valdivia's explanation why he stopped Mr. Chacon's car was found by the court to be forthright but it was complicated, so the trial court questioned him at length. Overall, the officer testified that he thought he had probable cause to stop Mr. Chacon for suspicion of DUI; it was his interest in investigating for drunk driving that was his primary motive for the stop, although he had noticed the modified muffler and considered it a reason for stopping the car as well.[3] He testified that he had pulled over at least 10 drivers in the past for muffler infractions but has not always stopped and cited

court may dismiss an infraction notice for a violation of this subsection if there is reasonable grounds to believe that the vehicle was not operated in violation of this subsection.

"This subsection (3) does not apply to vehicles twenty-five or more years old or to passenger vehicles being operated off the highways in an organized racing or competitive event conducted by a recognized sanctioning body."

[3] In response to a leading question by the State, Officer Valdivia testified that he decided to pull the vehicle over because of the muffler infraction. RP (Mar. 24, 2010) at 22. When asked by the trial court why he waited 45 seconds to stop Mr. Chacon for the muffler violation, he answered that he wanted "to investigate the possibility of a DUI" and would not have pulled Mr. Chacon's car over for the muffler violation alone. *Id.* at 35-36. He also agreed that his primary motive for pulling the car over was to investigate for a DUI violation rather than to ticket for a nonconforming muffler. *Id.* at 37. During a second round of questioning by the court, Officer Valdivia testified that the reason for the stop was the muffler violation and that he believed he would have probably pulled the car over even if he were not suspicious of a DUI. *Id.* at 43-44. However, he again confirmed that his primary motive for stopping the car was to investigate the DUI report: "if there was a weighted scale on [why I stopped the car,] it would have to be the DUI." *Id.* at 46.

the driver upon noticing a noncompliant muffler. He testified that modified mufflers—which he referred to at one point as "noisemaker[s]"—are "fairly common" in the Mattawa area. Report of Proceedings (RP) (Mar. 24, 2010) at 38, 44.

¶6 The trial court denied Mr. Chacon's motion to suppress, concluding that the stop "was not unconstitutionally pretextual under *State v. Ladson* or *State v. DeSantiago*, 97 Wn. App. 446, 983 P.2d 1173 (1999)." Clerk's Papers (CP) at 48 (Conclusion of Law 3.1) (citation omitted). Mr. Chacon challenges this conclusion[4] as well as three of the findings on which it was based.

## ANALYSIS

¶7 Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs . . . without authority of law." "Authority of law" requires a valid warrant unless one of a few jealously guarded exceptions to the warrant requirement applies. *In re Pers. Restraint of Nichols*, 171 Wn.2d 370, 379, 256 P.3d 1131 (2011) (Fairhurst, J., dissenting). The Washington Supreme Court has repeatedly affirmed that Washingtonians retain their privacy while in an automobile. *Ladson*, 138 Wn.2d at 358 n.10. But for Mr. Chacon's modified muffler, the State does not argue that Officer Valdivia was justified in pulling him over to investigate for DUI under *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The citizen's report triggering the officer's

---

[4] Mr. Chacon also assigns error to the trial court's conclusion of law 3.3, which repeats the substance of finding of fact 2.5, addressing Officer Valdivia's reasons for stopping the vehicle. A determination of an officer's motivation or reason for making a traffic stop is a finding of fact. *State v. Minh Hoang*, 101 Wn. App. 732, 741, 6 P.3d 602 (2000), *review denied*, 142 Wn.2d 1027 (2001); *State v. Weber*, 159 Wn. App. 779, 794, 247 P.3d 782 (Sweeney, J., dissenting), *review denied*, 171 Wn.2d 1026 (2011). We therefore treat it as such and subsume its consideration in addressing whether substantial evidence supports finding of fact 2.5. *See State v. Evans*, 80 Wn. App. 806, 820 n.35, 911 P.2d 1344, *review denied*, 129 Wn.2d 1032 (1996).

investigation was uncorroborated, and any details it might have contained are not in the record. *See State v. Hart,* 66 Wn. App. 1, 6-7, 830 P.2d 696 (1992) (an uncorroborated tip must possess enough objective facts to justify detention of the suspect).

¶8  For Fourth Amendment purposes, Officer Valdivia's observation of the muffler infraction would have been justification enough for stopping Mr. Chacon in order to investigate suspected drunk driving; the United States Supreme Court has held that an officer wishing to investigate a crime can stop a driver for any traffic infraction he observes. *Whren v. United States,* 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). Of concern to our Supreme Court in *Ladson,* in light of our constitution's broader privacy guaranty, was the extensiveness of traffic regulation, such that " 'virtually the entire driving population is in violation of some regulation as soon as they get in their cars, or shortly thereafter.' " 138 Wn.2d at 358 n.10 (quoting Peter Shakow, *Let He Who Never Has Turned Without Signaling Cast the First Stone: An Analysis of* Whren v. United States, 24 Am. J. Crim. L. 627, 633 (1997)). *Ladson* considered "whether the fact that someone has committed a traffic offense, such as failing to signal or eating while driving, justifies a warrantless seizure which would not otherwise be permitted absent [the] 'authority of law' represented by a warrant," and concluded it should not. *Id.* at 352 (footnotes omitted). "[T]he problem with a pretextual traffic stop is that it is a search or seizure which cannot be constitutionally justified for its true reason (i.e., speculative criminal investigation), but only for some other reason (i.e., to enforce traffic code) which is at once lawfully sufficient but not the real reason." *Id.* at 351.

¶9  To determine whether a given stop is pretextual, a court should consider the totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior. *Id.* at 358-59. The State must show that the officer, both subjectively and objectively, is actually motivated by a perceived

need to make a community caretaking stop aimed at enforcing the traffic code. *Id.* at 359. A court is required to "look beyond the formal justification for the stop to the actual one" when assessing whether a stop is pretextual. *Id.* at 353.

¶10 Evidence relevant to the officer's actual motive includes the nature of the patrol in which he or she is engaged, either by assignment or because his or her suspicion has been specifically aroused. *See id.* at 346 (officers working proactive gang control); *DeSantiago*, 97 Wn. App. at 452-53 (patrol officer engaged in narcotics investigation at the time he observed infraction); *State v. Myers*, 117 Wn. App. 93, 69 P.3d 367 (2003) (patrol officer following driver suspected of having a suspended license when infraction observed), *review denied*, 150 Wn.2d 1027 (2004); *State v. Montes-Malindas*, 144 Wn. App. 254, 261, 182 P.3d 999 (2008) (patrol officer surveilling suspicious van when infraction observed). Also relevant is whether or not the officer stops the offender immediately upon seeing the infraction, *see State v. Minh Hoang*, 101 Wn. App. 732, 741-42, 6 P.3d 602 (2000) (traffic infraction committed adjacent to officer's surveillance point, with officer immediately pulling over the driver), *review denied*, 142 Wn.2d 1027 (2001); whether or not the officer cites the offender for the traffic infraction, *see id.* at 742 (whether the offender is cited is a factor to be considered, but is not dispositive); and the officer's testimony as to his or her motivation, although an officer's candid admission to pretextual conduct is more probative than a denial of pretextual conduct. *Montes-Malindas*, 144 Wn. App. at 261 (citing *Ladson*, 138 Wn.2d at 359).

¶11 When reviewing the denial of a suppression motion, we determine whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is "substantial" when it is enough to persuade a fair-minded person of the truth of the stated premise. *Id.* We review de novo

whether the totality of the circumstances supports a conclusion that an unlawful pretext stop has occurred. *State v. Weber*, 159 Wn. App. 779, 786-87, 247 P.3d 782, *review denied*, 171 Wn.2d 1026 (2011).

¶12 Mr. Chacon assigns error to three of the trial court's findings of fact:

2.3   Upon arrival in the area of Rd. 24 SW, Officer Valdivia located a vehicle matching the description of the suspect vehicle, but did not initially observe any DUI-related driving. Officer Valdivia followed behind the vehicle for approximately 1/2 mile, which took about 30 to 45 seconds.

. . . .

2.5   Officer Valdivia's primary motivation in pulling the car over was to investigate the reported DUI, but he would have stopped the vehicle anyway for the exhaust infraction even without the previous report. These are not inconsistent with one another. The officer's investigation of the DUI was not the sole reason for the stop.

2.6   Officer Valdivia would have stopped the vehicle for the exhaust [violation] because he was out "with" the vehicle and he commonly stops vehicles for exhaust violations. "With" a vehicle according to O[fficer] Valdivia means following and observing a vehicle. The court found O[fficer] Valdivia credible as a witness, including when he opined that he probably would have pulled the vehicle over, once "with" it, even if he wasn't suspicious of a DUI.

CP at 47.

¶13 Mr. Chacon challenges finding 2.3 only for the court's determination that Officer Valdivia followed Mr. Chacon's car for "about 30 to 45 seconds" before activating his overhead lights, arguing that any amount of time under 45 seconds is not supported by the record. Br. of Appellant at 4 n.6. The officer originally estimated it had taken 15 seconds to follow Mr. Chacon for the half mile but agreed, when presented with the judge's calculation of the amount of time required to travel a half mile at 40 miles an hour,

that the lapse would have been "more like 40 [or] 45 seconds." RP (Mar. 24, 2010) at 35. Given that the officer testified to approximate distance and speed and his original estimate of a 15-second following time, the court's finding that the car was followed for "about 30 to 45 seconds" was within the range of the evidence.

¶14 Turning to finding 2.5, evidence supporting the finding that "Officer Valdivia's primary motivation in pulling the car over was to investigate the reported DUI" was extensive; the officer repeatedly testified that his primary motive for stopping the car was to investigate the reported DUI. The finding in 2.5 and in finding 2.6 that Officer Valdivia "would have stopped the vehicle anyway for the exhaust infraction even without the previous report" is not as clearly supported because the officer testified that sometimes he will stop a vehicle for such an infraction and sometimes he will not; he also testified in response to one of the court's hypothetical questions that he "probably" would have pulled the car over had he not received the report of the suspected DUI. *Id.* at 44. As the court found in finding 2.6, the officer was most consistent that once "with the vehicle" (in the sense of "actively looking for [a] particular vehicle" or, in this case, actively investigating the possibility of a crime) he *would* stop it for a muffler infraction. *Id.* at 39-40. He testified at least twice that he would have pulled the car over even absent suspicion of a DUI. *Id.* at 38, 43. We cannot say that the court's reconciliation of the officer's explanations and qualifications is not a rational, fair-minded one. The remainder of finding 2.6—that Officer Valdivia was credible—is a determination we do not disturb on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The three challenged findings are therefore supported by substantial evidence.

¶15 The findings do not support the court's conclusion that the stop was not pretextual, however. As observed in earlier decisions of this court, whether Officer Valdivia would have pulled over Mr. Chacon for the muffler violation

had he not been concerned about drunk driving is irrelevant to our analysis; our concern is only with why the stop was made in this particular case. *See Myers*, 117 Wn. App. at 97. While we accept the trial court's finding that the muffler violation was "*an* actual reason" for the stop (CP at 48 (emphasis added)), it was clearly subordinate to the officer's desire to investigate the DUI report. The muffler violation therefore cannot be characterized as *the* actual reason for the stop under *Ladson*. *Ladson* observes that in the analogous context of suppressing evidence obtained in pretextual searches that rely on the emergency exception, Washington courts have held that the search " 'must not be *primarily* motivated by intent to arrest and seize evidence.' " 138 Wn.2d at 357 (emphasis added) (quoting *State v. Angelos*, 86 Wn. App. 253, 256-57, 936 P.2d 52 (1997) (citing *State v. Nichols*, 20 Wn. App. 462, 464, 581 P.2d 1371, *review denied*, 91 Wn.2d 1004 (1978)), *review denied*, 133 Wn.2d 1034 (1998)). In every case presenting a pretextual stop issue, a traffic infraction will be offered as the justification, and thereby an actual reason, for the stop. The reasoning of *Ladson* compels the result that a traffic stop is without authority of law where it cannot be constitutionally justified for its primary reason (speculative criminal investigation) but only for some other reason (enforcing the traffic code) which is at once lawfully sufficient but only a secondary reason.

¶16 The State nonetheless suggests that pretext is never an issue when an officer stops a citizen for a traffic infraction in order to investigate a *driving-related* crime. Its argument is predicated on the statement in *State v. Nichols* that "[a] pretextual stop occurs when an officer stops a vehicle in order to conduct a speculative criminal investigation unrelated to the driving, and not for the purpose of enforcing the traffic code." 161 Wn.2d 1, 8, 162 P.3d 1122 (2007) (citing *Ladson*, 138 Wn.2d at 349, 351). Both *Nichols* and *Ladson* involved stops whose real purpose was alleged to be investigation for drugs, so it was accurate in those

cases to contrast a "speculative criminal investigation *unrelated to the driving*" with pretextual enforcement of the traffic code. But the rationale of *Ladson* cannot be reconciled with the State's position that an officer lacking probable cause to stop a driver in order to investigate a *driving-related crime* may rely pretextually on a civil traffic infraction for an investigatory stop. This same misreading of *Ladson* was addressed in *Myers*, in which this court found pretextual a traffic stop for an illegal lane change where the officer's real motive was to investigate whether the driver had a suspended license, a driving offense. 117 Wn. App. at 97. In rejecting the State's argument that the stop was justified by the mere fact that the officer was investigating a "driving" offense, this court pointed out that "*Ladson*'s reference to the investigation of suspicions 'unrelated to the driving' plainly refers to a driving infraction, not the criminal investigation." *Id.* at 98. *But see Weber*, 159 Wn. App. at 791 (attaching unspecified significance to the fact that the officer "was not conducting an investigation *unrelated to traffic offenses*").

¶17 The traffic stop that yielded the evidence on which the State charged Mr. Chacon was without authority of law because the reason for the stop—to investigate for drunk driving—was not exempt from the warrant requirement. When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed. *Ladson*, 138 Wn.2d at 359. We reverse the conviction and remand with directions that the trial court dismiss the charges with prejudice.

SWEENEY, J., concurs.

¶18 BROWN, J. (dissenting) — In my view, we should defer to the fact-finding discretion of this judge who determined from disputed facts "an actual reason for the stop" was the muffler violation. Clerk's Papers at 48 (Conclusion of Law

3.3). The officer cited Gilberto Chacon Arreola for the muffler violation. Certainly, a stop can serve multiple, legal, complimentary purposes so long as an actual stop reason passes legal muster. We should not expect investigating officers to be blind to other potential concurring violations detected when investigating an actual stop reason. While Officer Anthony Valdivia may have had suspicions regarding whether Mr. Chacon was involved with driving under the influence of alcohol, the trial court believed the officer's testimony regarding his muffler violation stop practices. Although Mr. Chacon asserts a pretext stop, this court recognized in *State v. Minh Hoang*, 101 Wn. App. 732, 742, 6 P.3d 602 (2000), that under *State v. Ladson*, 138 Wn.2d 343, 979 P.2d 833 (1999) suspicious patrol officers "may still enforce the traffic code, so long as enforcement of the traffic code is the actual reason for the stop." I would affirm. Accordingly, I respectfully dissent.